*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0360p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHRISTOPHER SKINNER,

*Plaintiff-Appellant,*

*v.*

No. 05-2458

A. PETER GOVORCHIN, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-73816—Nancy G. Edmunds, District Judge.

Submitted: July 18, 2006

Decided and Filed: September 18, 2006

Before: GILMAN and SUTTON, Circuit Judges; WISEMAN, Senior District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Christopher Skinner, Adrian, Michigan, *pro se*.

---

**OPINION**

---

SUTTON, Circuit Judge. While incarcerated at the Macomb Correctional Facility in New Haven, Michigan, Christopher Skinner filed a complaint against four state employees—Peter Govorchin, Hugh Wolfenbarger, Linda Wittman and Doug Ford—alleging that they had wrongfully garnished appeals costs charged against him from his prison account. The district court summarily dismissed the complaint, and Skinner, proceeding *pro se*, appeals. For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

I.

In 2001, Skinner filed a § 1983 complaint alleging that the State had wrongfully taken several of his electronic and computer publications. The district court granted the defendants' motion for summary judgment, and a panel of our court affirmed on November 4, 2003. *Skinner v. Jones*, 79 F. App'x 862 (6th Cir. Nov. 4, 2003). On November 12, 2003, Govorchin, an assistant

---

[*] The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

attorney general, submitted a bill of appellate costs to the Sixth Circuit for $1,619.25 under 28 U.S.C. § 1920 and Rule 39 of the Federal Rules of Appellate Procedure. Skinner did not oppose the request.

On March 5, 2004, our court issued the mandate in *Skinner v. Jones* and awarded $1,619.25 in costs to the State. On March 8, 2004, Govorchin wrote a letter to Wittman, a litigation manager for the Michigan Department of Corrections, asking her to process the March 5 mandate. On March 25, 2004, Wittman asked Ford, an administrative officer at the Macomb prison, to collect the costs award from Skinner's prison trust account. And on April 8, 2004, Ford began withdrawing funds from Skinner's account, taking all but $10 from that account each month. After complaining about the removal of these funds from his account and after failing to obtain relief from Wolfenbarger (the prison warden) through the prison grievance process, Skinner filed this § 1983 complaint, alleging that the four defendants had wrongfully garnished funds from his prison account. Skinner sought relief under a wide variety of federal constitutional theories, the Federal Rules of Appellate Procedure, the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(f), and state law. The defendants filed a motion to dismiss or, in the alternative, for summary judgment. Relying on a magistrate judge's report and recommendation, the district court rejected each of Skinner's claims as a matter of law.

II.

Contrary to Skinner's claim against all four defendants, the award as an initial matter complied with Rule 39 of the Federal Rules of Appellate Procedure. That rule says that "unless the law provides or the court orders otherwise," costs may be "taxed against the appellant" when the appellee prevails (and vice versa when the appellant prevails). Fed. R. App. P. 39(a). The rule then lays out the procedure for assessing costs:

> (1) A party who wants costs taxed must—within 14 days after entry of judgment—file with the circuit clerk, with proof of service, an itemized and verified bill of costs.
>
> (2) Objections must be filed within 10 days after service of the bill of costs, unless the court extends the time.
>
> (3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must—upon the circuit clerk's request—add the statement of costs, or any amendment of it, to the mandate.

Fed. R. App. P. 39(d).

Under the rule, the State as a prevailing appellee had a right to request costs. And the court's award of costs conformed in each particular with Rule 39(d). On November 4, 2003, the *Skinner v. Jones* panel issued an order rejecting Skinner's appellate arguments. On November 12, 2003, eight days after the court entered the order, the State filed with the circuit clerk, with proof of service, an itemized and verified bill of costs. Skinner did not object to the bill of costs within ten days (and indeed did not object to the bill until filing this complaint eleven months later), and the court at no point extended the time for objecting to the bill of costs. On March 5, 2004, eight days after the court denied Skinner's motion for rehearing en banc, the clerk's office issued the court's mandate, which included the itemized statement of costs imposed on Skinner.

Even if the court's award of costs did not violate Rule 39 of the Federal Rules of Appellate Procedure, Skinner contends that it violated the Prison Litigation Reform Act, which governs civil actions filed by prisoners. The applicable sections of the PLRA provide:

> (f) (1) Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings . . . .
>
> (2) (A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.
>
> (B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection [(b)(2)].
>
> (C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

28 U.S.C. § 1915(f).

At first blush, it is difficult to see how this award of costs violated the PLRA. A review of the prior case shows that it involved a "judgment against a prisoner [that] include[d] the payment of costs," and the judgment "rendered for costs" came "at the conclusion of the suit."

Skinner maintains, however, that this award violates the PLRA because: (1) Rule 39 of the Federal Rules of Appellate Procedure applies "unless the law provides . . . otherwise"; (2) the PLRA is a law; (3) the PLRA provides otherwise by saying that the prisoner must pay the costs award only "[i]f the *judgment against a prisoner includes* the payment of costs," 28 U.S.C. § 1915(f)(2)(A) (emphasis added); and (4) the judgment entered against Skinner in this case did not "include[]" an award of costs because the costs award was entered later in connection with the issuance of the mandate. To his credit, Skinner has identified one case, *Feliciano v. Selsky*, 205 F.3d 568 (2d Cir. 2000), that appears to embrace this line of analysis. There, an inmate lost a § 1983 action against prison officials and appealed to the Second Circuit, which affirmed. The State filed a bill of costs (totaling $54.32) within the time frame prescribed by Rule 39, and the prisoner timely objected. *Id.* at 569–70. In denying the request for costs, the court interpreted § 1915(f)(2)(A) as falling within the "law provides otherwise" language of Rule 39(a), noting that the appellate rule would allow for the traditional taxation of costs "but for the *in forma pauperis* status of [the appellant]." *Id.* at 570. The court then reasoned that its summary order affirming the district court's judgment had not "include[d]" a provision for the payment of costs by the inmate. "Unless there is a specific direction by the court for the payment of costs by a prisoner proceeding *in forma pauperis*," the court concluded that "no costs may be taxed by the prevailing party." *Id.* at 572.

We are not prepared to follow Skinner, accompanied by *Feliciano*, down this road. *First*, while Rule 39(a) acknowledges that another "law" could "provide[] otherwise" when it comes to the procedures for taxing costs established by Rule 39(d), the PLRA does not seem to be such a law. The operative section of the PLRA begins by saying, "Judgment may be rendered for costs at the conclusion of the suit or action *as in other proceedings*." 28 U.S.C. § 1915(f)(1) (emphasis added). The "as in other proceedings" language suggests that the PLRA does not mean to alter the traditional mechanics for *awarding* costs—set forth in Rule 39(d)—but to establish rules unique to indigent prisoners for *paying* such costs. *See id.* § 1915(b)(1) (requiring prisoners to pay the entire filing fee and providing a formula for calculating the amount of the initial filing fee payment when the prisoner does not have sufficient funds to pay the entire filing fee at once); *id.* § 1915(b)(2) (providing a formula for the monthly payment of any outstanding balance due after the partial

payment of the filing fee); *id*. § 1915(b)(3) (mandating that the amount collected for the filing fee may not exceed the amount permitted by statute).

*Second*, once one accounts for the "as in other proceedings" phrase, the language upon which Skinner relies—"If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered"—presents a weak foundation for altering the traditional Rule 39(d) procedure for awarding costs. Even the most literal reading of the sentence does not say that prisoners must pay costs only when the costs award appears in a court directive called a judgment, as opposed to say an order or mandate; it simply says that such costs awards must be paid by the prisoner when included in the judgment. And the context of the sentence offers no indication that Congress meant to use "judgment" in an exclusive sense. To be sure, one can imagine settings in which separate references to judgments and mandates might have distinct meanings. *Compare* BLACK'S LAW DICTIONARY 846 (7th ed. 1999) (stating that "[t]he term 'judgment' includes a decree and any order from which an appeal lies"), *with id*. at 973 (defining "mandate" as "[a]n order from an appellate court directing a lower court to take a specified action"). But that is not what the PLRA says. And it does no perceptible harm to the PLRA to conclude that a costs award may appear in a judgment or in an order or, as here, in conjunction with the issuance of the mandate when the inmate does not oppose the request for costs. *Cf*. 28 U.S.C. § 1920 ("A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."). Nothing in the history of the passage of the PLRA suggests any reason why Congress would have wished to permit costs awards only when they appear in "judgments" and would have wished in the process to alter the traditional application of Rule 39(d) in this setting.

*Third*, Skinner's proposed interpretation makes little sense. It would force courts to decide whether to impose costs at the time they reject the losing party's claims on the merits rather than waiting, as Rule 39(d) contemplates, to see if the prevailing party chooses to seek costs. In the context of indigent prisoner claims, it is by no means obvious that the prevailing party against the inmate (usually the State) necessarily would seek costs. Under Skinner's proposed interpretation, indigent prisoners, and indigent prisoners alone, would face the risk of having costs entered against them even when the State would not have sought them in the first instance.

Nor is it apparent who would benefit from this rule. As shown, it would not necessarily benefit indigent prisoners in the long run, even if it would give Skinner a break here. And States, to our knowledge, do not reflexively seeks costs against inmate litigants, perhaps because they are frequently indigent or perhaps because the state resources needed to collect such awards frequently exceed the value of the awards. (Consider the $54 award in *Feliciano*.) At any rate, States, like all litigants, know how to seek costs when they want them.

Skinner's proposed rule also fails to benefit the courts. We can think of no benefit to courts (and clerks' offices) from being asked to vary the normal process for awarding costs under Rule 39(d) for one set of litigants. Courts are far better equipped to rule on contested motions (or even uncontested motions, as in this case) than they are to decide in the abstract whether a costs award might be appropriate. Every one of these problems is avoided if we construe the provision consistently with Rule 39(d) rather than inconsistently with it. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) (noting that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984).

*Fourth*, while the brief analysis in *Feliciano* suggests that the Second Circuit might have taken a different route here, the court did not have occasion to consider the impact of its decision on Rule 39(d) or some of the unusual consequences of its interpretation. Because we construe § 1915(f) of the PLRA in harmony with Rule 39(d), we do not follow *Feliciano* here.

Under these circumstances, Skinner's challenge to the award of costs must fail. When the State sought costs in this case, Skinner failed to object to the request within 10 days, as Rule 39 requires, and as a result the court imposed them in connection with the issuance of the mandate. Had Skinner objected to the State's request (or to the amount of it), the panel would have ruled on the request and issued a separate order regarding costs. Because the State (and this court) complied with Rule 39, and because nothing in the PLRA requires a different procedure for awarding costs, we reject Skinner's argument.

### III.

Although Skinner's challenge to the court's *award* of costs misses the mark, his challenge to the State's *collection* of those costs does not. With the passage of the PLRA, Congress created special payment procedures that apply to prisoners who appeal *in forma pauperis*. Under those payment procedures, which apparently were mislabeled, *see In re Prison Litigation Reform Act*, 105 F.3d 1131, 1138 (6th Cir. 1997) ("Section 1915(f)(2)(B) mistakenly refers to § 1915(a)(2) as the authoritative subsection for the payment process. . . . The payment process is located in § 1915(b)(2)."), the State may collect costs awards in the same manner as it collects filing fees. The filing-fee provision says:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2).

With respect to collecting costs, as with collecting filing fees, then, the State may collect the award in monthly increments—by withdrawing 20% of the inmate's "preceding month's income credited" to his prisoner account until the full award has been paid so long as $10 remains in the account each month. The State in this instance, however, removed money from Skinner's trust account at the monthly rate of 100%. This the statute does not allow.

Nor, contrary to the State's suggestion, does Skinner's requested injunction asking the defendants prospectively to terminate this illegal practice violate the Tenth or Eleventh Amendments. *See Ex Parte Young*, 209 U.S. 123 (1908); *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9 (1975). We thus remand the case to the district court to enter an injunction ordering defendants to conduct any further garnishment of Skinner's prison account, at least for purposes of paying this costs award, at the 20% rate per month contemplated by § 1915(b)(2). *Cf. McGore v. Wrigglesworth*, 114 F.3d 601, 606–07 (1997).

### IV.

Contending that Govorchin (the assistant attorney general) was responsible for the improper garnishment of some of the money taken from his prison trust account, Skinner seeks monetary relief against him in his official and individual capacities under § 1983. As to the official-capacity claim, the Tenth and Eleventh Amendments bar suits in federal court when the action is "in essence one for the recovery of money from the state [and] the state is the real, substantial party in interest," which invariably will be the case when the claimant sues a state employee in his official capacity. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see id.* (noting "that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc).

That Skinner seeks money damages in the form of a reimbursement of funds paid does not change things.  In *Ford Motor Company v. Indiana Department of Treasury*, 323 U.S. 459 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 614 (2002), a taxpayer who had paid taxes to Indiana under protest sought a refund of those taxes from the state officials who had collected them.  Even though the taxpayer "at one time had the money, and paid it over to the State pursuant to an allegedly unconstitutional tax exaction," *Edelman*, 415 U.S. at 669, the Court held that the Eleventh Amendment barred an action in federal court for reimbursement by the State of the taxes unless the State had consented to such a suit.  *Ford Motor Co.*, 323 U.S. at 464; *see also Papasan v. Allain*, 478 U.S. 265, 278 (1986) (noting that relief should not be granted if "the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else").

As to Skinner's individual-capacity claim, sovereign immunity does not bar the suit, but prosecutorial immunity does.  "Where relief is sought under general law from wrongful acts of state officials, the sovereign's immunity . . . does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally."  *Ford Motor Co.*, 323 U.S. at 462.  Even though the State's sovereign immunity does not preclude suits against state officials in their individual capacities for damages under § 1983, the common-law doctrine of prosecutorial immunity still applies.  In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Court held that state prosecuting attorneys generally are absolutely immune from § 1983 liability.

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court.  The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.  Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Id.* at 424–25.  Since *Imbler*, courts have extended the immunity beyond "initiating a prosecution and . . . presenting the State's case," *id.* at 431, to cover any activities undertaken "in connection with [one's] duties in functioning as a prosecutor," *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).  The immunity also extends beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating . . . judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).

"The analytical key to prosecutorial immunity," we have explained, "is advocacy—whether the actions in question are those of an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003), *reh'g denied* (2004) (emphasis omitted).  If the challenged actions of the prosecutor were not performed in his role as advocate, if they "do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," then only "[q]ualified immunity" applies. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

In this instance, the district court correctly found that the challenged actions by Govorchin were all "intimately associated with the judicial phase" of the case and accordingly were entitled to absolute immunity.  Govorchin's efforts to recover costs in *Skinner v. Jones* represented a paradigmatic act of advocacy on behalf of the State, as the pursuit of costs at the conclusion of litigation is a function ordinarily performed by an attorney acting on behalf of a client and thus is an integral part of the litigation itself.

## V.

Skinner also challenges the district court's dismissal of his claims against Wolfenbarger. In his complaint, Skinner contended that Wolfenbarger (1) failed to respond appropriately to Skinner's grievance appeal and (2) failed to exercise appropriate supervisory control over the other prison-employee defendants, Wittman and Ford. The district court properly dismissed both claims as a matter of law.

Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (reversing denial of summary judgment to prison officials whose only involvement was the denial of administrative remedies); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. June 7, 2001) (affirming dismissal of the claims against a defendant whose only involvement in the matters giving rise to the § 1983 action was his denial of the appeal of the plaintiff-prisoner's grievance). And Skinner cannot premise a claim on Wolfenbarger's supervisory status because there is no *respondeat superior* liability under § 1983. *See Shehee*, 199 F.3d at 300 (noting that "§ 1983 liability must be based on more than *respondeat superior*, or the right to control employees").

## VI.

For these reasons, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.