**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3315
_____

KIM RAGLAND,
                                Appellant

v.

COMMISSIONER NEW JERSEY DEPARTMENT OF CORRECTIONS; WARDEN
MID STATE CORRECTIONAL FACILITY; DEBRA QUINONES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-14-cv-00458)
District Judge:  Honorable Robert B. Kugler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 20, 2017

Before: JORDAN, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 30, 2017)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Kim Ragland appeals from an order of the United States District Court for the District of New Jersey granting summary judgment in favor of the Defendants in this 42 U.S.C. § 1983 action. We will affirm.

While a state prisoner, Ragland filed this civil rights action against New Jersey Department of Corrections officials Gary M. Lanigan, Evelyn Davis, Debra Quinones, and Lydell Sherer, alleging that they improperly withdrew funds from his inmate account in violation of his equal protection and due process rights under the Fourteenth Amendment. In June 2014, the District Court dismissed all claims as to Sherer, and the equal protection claim as to the remaining Defendants, but permitted his due process claims to proceed. After a brief period of discovery, Defendants moved for summary judgment, which the District Court granted on the ground that the state provided adequate post-deprivation procedures. This appeal ensued.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), see Spruill v. Gillis, 372 F.3d 218, 226 (3d Cir. 2004), and over a grant of summary judgment, see McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005).[1] And we may affirm based on any ground supported by the record. Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

---

[1] The District Court properly dismissed the claims against defendant Sherer as time-barred, see Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 859 (3d Cir. 2014), and the equal protection claim because Ragland wholly failed to allege the elements of such a claim, see Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). The latter dismissal was without prejudice, but Ragland did not seek to correct the deficiencies to include the claim in his amended complaint. See Borelli v. City of

Ragland incurred financial obligations including restitution and fines stemming from his conviction, as well as fees associated with the filing of federal civil rights cases. The New Jersey Department of Corrections (DOC) is authorized to deduct funds to satisfy these obligations pursuant to N.J. Stat. Ann. §§ 2C:46-4, 30:4-92, and the Prison Litigation Reform Act (PLRA).[2]  In his complaint, Ragland alleges that the DOC deducted funds in excess of that authorized by §§ 2C:46-4 and 30:4-92, and in violation of N.J.A.C. § 10A:2-2.2(h).

There is no dispute that a prisoner has a protected property interest in the funds held in his prison account, and, therefore, cannot be deprived of this property without due process of law.  See Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir. 2002).  Generally, to comport with due process, a state must provide predeprivation procedures before taking property, regardless of the adequacy of its post-deprivation remedies.  Zinermon v. Burch, 494 U.S. 113, 132 (1990).  However, where there is a "random, unauthorized" deprivation, the state can avoid liability solely by providing adequate post-deprivation procedures.  Id. at 115; compare Higgins, 293 F.3d at 694 (requiring predeprivation procedures where the taking was pursuant to "an established state procedure").  Ragland claims that the taking of his funds was not random, but was unauthorized, and in

Reading, 532 F.2d 950, 951-52 (3d Cir. 1976) (per curiam) (an order dismissing a complaint without prejudice is not final within the meaning of § 1291, unless "the plaintiff cannot amend or declares his intention to stand on his complaint").  We therefore confine our analysis to the due process claims.
[2] The PLRA requires prisoners proceeding in forma pauperis to pay the entire filing fee and provides a formula for calculating the amount of the initial filing fee payment and of

3

contravention of the state statutes. He neither challenges the amount of his financial obligations nor claims that he was entitled to any predeprivation procedures.[3] The only due process claim in his complaint is that the amount of funds that were deducted exceeded that allowed by state statute; such a claim could not be remedied by predeprivation procedures. See Parratt v. Taylor, 451 U.S. 527, 541 (1981) (explaining that predeprivation procedures are "impracticable" where the state cannot know when such deprivations will occur), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). We, therefore, agree with the District Court that if the post-deprivation procedures are adequate, Ragland is not entitled to relief.

Ragland argues that there was no post-deprivation hearing. But he availed himself of an adequate post-deprivation remedy when he utilized the prison's internal grievance system. See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000); Revell v. Port Auth., 598 F.3d 128, 138-39 (3d Cir. 2010) (discussing New Jersey's post-deprivation remedy procedures). The fact that he did not prevail through this grievance procedure does not undermine its adequacy as a post-deprivation remedy. See Hamlin v. Vaudenberg, 95 F.3d 580, 585 (7th Cir. 1996) (holding that post-deprivation remedy must be "meaningless or nonexistent" to be inadequate); see also Holloway v. Walker, 784 F.2d 1287, 1293 (5th Cir. 1986) (noting that post-deprivation remedy not rendered

_____

the payments on the outstanding balance. See 28 U.S.C. §§1915(b)(1) & (2).

[3] Ragland makes clear in his complaint that he is aware of his financial obligations and the DOC's policy for deducting payments in satisfaction of them. Indeed, he attached to his complaint a copy of the DOC's Facility Rule Handbook, which details the policies for

4

inadequate by default of the claim).  And Ragland had an additional remedy available to

him through the New Jersey Tort Claims Act (NJTCA), N.J. Stat. Ann. § 59:1-1, et. seq.

See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983) (under the NJTCA, "prison

inmates are entitled, as they were at common law, to a cause of action against prison

officials and other public employees for injuries resulting from tortious acts committed

during the performance of duties of a ministerial nature"); Hudson v. Palmer, 468 U.S.

517, 535 (1984) (post-deprivation tort remedy is all the process a state need provide for

random, unauthorized taking).  Ragland argues on appeal that the NJTCA is an

insufficient post-deprivation judicial remedy because it is limited to "unauthorize[d] acts

by state employees."  Reply Br. at 3.  The complaint alleges, however, that Defendants

removed the funds pursuant to an "unadopted policy" and "well beyond" that which was

authorized by law − that is, that Defendants performed an authorized act in an

*unauthorized* manner.  Accordingly, we agree with the District Court that the DOC's

post-deprivation procedures are sufficient to satisfy Ragland's procedural due process

rights.

In their motion for summary judgment, Defendants explained how the manner in

which they deducted funds to satisfy Ragland's obligations under the PLRA comported

with the pertinent state statutes.  In response, for the first time, Ragland claimed that the

Defendants improperly calculated his obligation under the PLRA, arguing, in part, that

N.J.S.A. § 2C:43-3.1, which provides for collection of state-imposed assessments, was

---

deducting funds from inmate accounts to satisfy financial obligations.

preempted by the PLRA. In particular, Ragland maintained that Defendants deducted funds beyond that permitted under 28 U.S.C. § 1915(b)(2). The District Court denied this claim on the basis that Ragland had predeprivation notice of the PLRA, which it determined was not preempted by state statute, as well as post-deprivation remedies available to him. Although it is arguable whether this claim was properly before the District Court[4], we nonetheless agree that it lacks merit. The District Court properly concluded that § 2C:43-3.1 is not preempted under the Supremacy Clause because the PLRA does not conflict with it.[5] See Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 222 (3d Cir. 2001) (noting that state law conflicts with federal law "when it is impossible to comply with both the state and the federal law, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'") (citation omitted). As the record makes clear, the state deducts funds from

---

[4] The parties were directed to address whether this claim was properly before the District Court, but failed to do so. Compare Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") with Whitaker v. Milwaukee Cty., 772 F.3d 802, 808-09 (7th Cir. 2014) (distinguishing between new legal theories, which may be raised for the first time in summary judgment response, from "new factual bases for claims," which may not) and Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003) (new allegations in a summary judgment response can be treated as a request to amend the complaint). Nevertheless, we find no prejudice in the District Court's consideration of the claim, particularly where the issue was addressed by both parties. See generally Berry v. Chicago Transit Authority, 618 F.3d 688, 693 (7th Cir. 2010) ("a plaintiff may not use her brief opposing summary judgment to introduce claims not stated in her complaint-at least not without a defendant's consent").

[5] Ragland does not argue that the PLRA expressly or impliedly displaces the state statute. See Hillsborough Cty. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985).

an inmate's account to satisfy obligations under the PLRA *prior* to deducting funds for state-imposed obligations. See District Ct. Docket #46-9 at pg.8. Accordingly, and in compliance with the PLRA, the state properly calculated the amount to be deducted for Ragland's PLRA payments as a percentage of his total monthly income of $26.[6] See 28 U.S.C. § 1915(b) (2); see generally Cosby v. Meadors, 351 F.3d 1324, 1326 (10th Cir. 2003) (interpreting "income" under § 1915(b)(2) "to include all deposits to the prisoner's inmate account").

Based on the foregoing, we will affirm the District Court's judgment.

---

[6] In light of our disposition, we need not address the propriety of the District Court's conclusion that that the alleged loss could be adequately addressed by New Jersey's post-deprivation procedures. See e.g. Skinner v. Govorchin, 463 F.3d 518, 523-24 (6th Cir. 2006) (addressing a prisoner's claim that state's collection of PLRA costs was violative of § 1915(b)(2)); see generally Newlin v. Helman, 123 F.3d 429, 436 (7th Cir. 1997), overruled in part on other grounds by Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000) ("How much a prisoner owes, and how it will be collected, is determined entirely by the statute and is outside the prisoner's (and the prison's) control once the prisoner files the complaint or notice of appeal."); Bey v. Williams, 2010 WL 1759573, at *2 (D. Md. Apr. 29, 2010, No. 09-cv-2181) ("Here, however, the alleged 'taking' occured pursuant to federal statute, and thus requires federal court review").