NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0085n.06

No. 18-3363

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RED ZONE 12 LLC, et al.,

      Plaintiffs-Appellants,

v.

CITY OF COLUMBUS, et al.,

      Defendants-Appellees.

```
FILED
Feb 21, 2019
DEBORAH S. HUNT, Clerk
```

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

BEFORE: GIBBONS, ROGERS and STRANCH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** This case arises out of a nuisance abatement action brought by City Attorney Richard Pfeiffer, Jr. on behalf of the state of Ohio against Red Zone LLC ("Red Zone"),[1] a hip hop nightclub in Columbus, Ohio (the "City"). Following litigation of the nuisance suit, which the Franklin County Municipal Court dismissed upon finding "absolutely no public harm" since the nightclub had shut down prior to the nuisance action, Red Zone filed a seven-count lawsuit against Pfeiffer and the City in Ohio state court. Under 42 U.S.C. § 1983, Red Zone alleged that the nuisance abatement action violated substantive and procedural due process under the Fourteenth Amendment, the equal protection clause of the Fourteenth Amendment, and the takings clauses of the Fifth Amendment and the Ohio Constitution and that

---

[1] The nuisance action was also filed against 303 South Front Street LLC, which owned and leased property to Red Zone, LLC, and their managers, Christopher Corso and Michael Gallicchio. For the purposes of this appeal, however, "Red Zone" refers to both companies. They, along with Corso and Gallicchio, are joint appellants in the present appeal.

Pfeiffer and the City were liable for breach of contract, negligent misrepresentation, malicious civil prosecution, and abuse of process.

After Pfeiffer and the City removed the case, the district court granted their motion for judgment on the pleadings with respect to their federal constitutional claims and remanded the remaining state law claims. Regarding the federal constitutional claims, the district court held that (1) Pfeiffer was protected by absolute prosecutorial immunity and (2) the City could not be liable under § 1983 because Pfeiffer acted as an agent of the state, rather than the city, and because Red Zone had not otherwise sufficiently alleged a policy or custom outside of Pfeiffer's conduct. On appeal, Red Zone challenges both of these determinations. We agree with the district court that Pfeiffer was entitled to prosecutorial immunity and that Red Zone did not adequately allege a custom or policy that would support liability against the City. We therefore affirm the district court's grant of judgment on the pleadings with respect to the federal constitutional claims.

I.

In late 2012, Red Zone began operating as a hip hop nightclub at 303 South Front Street, Columbus, Ohio. Red Zone was twice subjected to gang-related violence. First, in November 2013, a gang-related shooting broke out during a show featuring hip hop artist Rich Homie Quan. While the police investigated the shooting, Red Zone shut down its business. About two weeks later, "at the suggestion of and with the blessing of the city police," Red Zone reopened. DE 19, First Amended Compl., Page ID 312. Second, in December 2013, Red Zone held another show featuring Rich Homie Quan to promote "an end to gang violence" and "to promote peace." *Id.* at 313. That evening, however, another gang-related shooting occurred at the nightclub. Red Zone immediately shut its doors and never reopened.

In January 2014, Red Zone's managers, Christopher Corso and Michael Gallicchio, met with Columbus city officials including George Speaks and assistant City Attorney Steve Dunbar to discuss the incidents and status of Red Zone. At that meeting, Red Zone and the City reached an agreement in which Red Zone "would agree to close the 'large nightclub' business at the property in exchange for them being able to keep a liquor license and continue as an alternative business on the property such as a restaurant, bar, grocery, [or] carryout." *Id.* at 314. The City also agreed that so long as the business did not operate as a nightclub, the City would not bring any legal action, would not object to Red Zone's reopening the business for another purpose, and would not object to Red Zone's retaining a liquor license. Dunbar offered to memorialize the agreement in writing. *Id.* at 315. Red Zone closed its nightclub business, evicted the tenant business operator, and "otherwise did everything demanded of and requested by the city and Mr. Pfeiffer." *Id.* at 315.

According to Red Zone, the City's efforts to memorialize the oral agreement fell short. In April 2014, Pfeiffer sent Red Zone a document entitled "Agreed Judgment Entry & Permanent Injunction Order." Contrary to what Red Zone believed it had agreed to, the draft agreement sought to permanently enjoin it from conducting business involving alcohol or dancing at the property. The City and Red Zone continued negotiating between April and June. Red Zone asked the City to honor the original January agreement; the City refused. The City also indicated that it would not allow Red Zone to transfer its liquor license to a new business. According to Red Zone, the City "felt like the plaintiffs needed to be more severely punished" and that "this area of the city was undergoing redevelopment and that plaintiffs' business serving the 'urban' and 'hip hop' and minority residents did not fit with their redevelopment plans, and hurt the newly developing

businesses and residential housing in the area by prominent developers catering to largely wealthy, non-minority customers." *Id.* at 317.

Unable to reach agreement, Pfeiffer filed a nuisance abatement action against Red Zone in June 2014. Bringing claims under Ohio Revised Code Chapter 3767 and the Columbus City Code § 4703.01(F)(1), Pfeiffer sought a permanent injunction to prevent Red Zone from "maintaining" a public nuisance, to bar the possession or sale of alcohol on the property, and to prohibit usage of the space for any purpose for a one-year period. DE 19-2, Amend. Compl. Perm. Inj. Relief, Page ID 362–69. Red Zone alleged that, throughout the litigation of the nuisance action, Pfeiffer and the City delayed the case and obstructed the discovery process, even ordering city police officers not to speak with Red Zone or its legal counsel. Red Zone deposed assistant City Attorney Dunbar and detective Steve Rosser. During his deposition, Rosser said that he "[didn't] know how there could be [a nuisance] because [Red Zone had] closed" before Pfeiffer requested a permanent injunction. DE 19, First Amend. Compl., Page ID 323. Unable to "litigate and bear the mounting [legal expenses]," Red Zone ultimately "sold the underlying property at a significant loss" and filed a motion for summary judgment. *Id.* at 328. The Franklin County Municipal Court granted it with emphasis on the pointlessness of the litigation. The municipal court said:

> Here, there is absolutely no public harm that needs [prevention] as the business that operated at the subject property has been closed for roughly two years, the property has transferred to a reputable developer, the building itself is slated to be demolished, and the commercial property is to be replaced by a residential condominium building thus making it impossible for a nuisance, such as the kind described in the Complaint . . . to reoccur.

DE 19-3, Franklin County Municipal Court Order, Page ID 375. The municipal court also found that Pfeiffer did not offer sufficient evidence warranting an injunction preventing Red Zone from conducting business elsewhere in the county. Pfeiffer did not appeal.

4

A year later, in March 2017, Red Zone filed the current case against Pfeiffer and the City in Ohio state court, alleging that the City had used selective enforcement actions against their club, which served a predominantly African American clientele, in order to effectuate a redevelopment program. Red Zone alleged that the nuisance abatement action resulted in several constitutional violations under 42 U.S.C. § 1983: substantive and procedural due process under the Fourteenth Amendment, the equal protection clause of the Fourteenth Amendment, and the takings clauses of the Fifth Amendment and Ohio Constitution. Red Zone further asserted that Pfeiffer and the City were liable for breach of contract, negligent misrepresentation, malicious civil prosecution, and abuse of process. Red Zone requested $25,000 in damages per violation. Red Zone also sought a writ of mandamus directing the City "to compensate them for taking their property and business without just compensation." DE 19, First Amended Compl., Page ID 345. Pfeiffer and the City removed to federal court, filed a motion for judgment on the pleadings, and filed a motion for sanctions against Red Zone for "improperly including false allegations" in the complaint. DE 24, Mot. For Sanctions, Page ID 502.

The district court granted Pfeiffer and the City's motion for judgment on the pleadings with respect to the federal constitutional claims, remanded the remaining state law claims, and denied their motion for sanctions as moot. In dismissing the federal constitutional claims, the district court held that (1) Pfeiffer was entitled to absolute prosecutorial immunity and (2) the City could not be liable because Pfeiffer acted as an agent of the state, not of the City, when he filed the nuisance suit and because Red Zone did not otherwise adequately allege a municipal policy or practice related to the federal rights violations. Red Zone appeals both of these determinations.

II.

5

This court reviews a district court's judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same *de novo* standard as it reviews a decision granting a motion to dismiss under Rule 12(b)(6). *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). Judgment on the pleadings is proper when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). Accordingly, the court construes the complaint in the light most favorable to the nonmoving party, accepts the well-pled factual allegations as true, and determines whether the complaint contains enough facts to make the legal claims facially plausible. *Id.* (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)); *see also Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 550 (6th Cir. 2008) (applying the *Twombly* standard to motions for judgment on the pleadings).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but is "not akin to a probability requirement." *Id.* (internal citations omitted). In conducting this analysis, this court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.*, 508 F.3d at 336. And although this court "primarily considers the allegations in the complaint," "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken

into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### III.

On appeal, Red Zone contends that the district court erred in dismissing the 42 U.S.C. § 1983 claims. It argues that (1) Pfeifer was not entitled to absolute immunity and (2) Red Zone adequately alleged a municipal practice or custom related to the potential constitutional violations. We disagree. First, because Pfeiffer acted within the scope of his prosecutorial duties and exercised prosecutorial functions when he pursued the nuisance abatement action against Red Zone, he is entitled to absolute prosecutorial immunity. Second, Red Zone failed to adequately plead a municipal custom or policy to establish municipal liability under § 1983. We therefore affirm the district court's judgment on the pleadings with respect to Red Zone's federal constitutional claims against Pfeiffer and the City.

### A.

Absolute prosecutorial immunity shields prosecutors in § 1983 suits for individual damages when prosecutors act within the scope of their prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). The protection arises in part from a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423. City attorneys are covered, *Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir. 1989); as are prosecutors who pursue civil actions, *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (applying absolute immunity to prosecution to recover costs in civil suit and noting that absolute "immunity also extends beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an

enforcement role in initiating judicial proceedings") (ellipsis and internal quotations omitted); *see also Blakely v. United States*, 276 F.3d 853, 871 (6th Cir. 2013) (applying immunity to civil forfeiture); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (applying immunity to civil nuisance and forfeiture).

In determining whether an official is entitled to prosecutorial immunity, this court employs a "functional approach" and looks to the "nature of the function performed, not the identity of the actor who performed it." *Cooper*, 203 F.3d at 944 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The functional approach asks whether the conduct was "undertaken in connection with one's duties in functioning as a prosecutor." *Skinner*, 463 F.3d at 525 (brackets and internal quotation marks omitted). When performing functions that are "intimately associated with the judicial phase of the criminal process," prosecutors are absolutely immune from civil suits. *Imbler*, 424 U.S. at 430. On the other hand, functions which are "investigative" or "administrative" are more removed from the judicial process, and therefore the prosecutor would only be protected by qualified immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991). Thus, "[t]he analytical key to prosecutorial immunity" is "whether the actions in question are those of an advocate." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000). Whether the prosecutor has an improper motive, acts in bad faith, or even acts in an unquestionably illegal manner is irrelevant. *Cady v. Arenac County*, 574 F.3d 334, 341 (6th Cir. 2009); *see also Imbler*, 424 U.S. at 431 & n.34 (holding that a prosecutor is still immune, even after presenting false evidence at trial); *Beckett v. Ford*, 384 F. App'x 435, 452 (6th Cir. 2010) (finding a prosecutor who threatened witnesses to be immune);

*Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (failing to disclose exculpatory information does not preclude a prosecutor from absolute immunity).

Here, Pfeiffer was shielded by prosecutorial immunity. Red Zone asserts that Pfeiffer's actions "go far beyond a city attorney's duties as a mere prosecutor" because "he acted as the sole 'investigator' and decision maker about whether and when to impose the nuisance action." CA6 R. 20, Red Zone Br., at 33, 36–37. Red Zone supports this argument by noting that Pfeiffer "negotiated with appellants to try to get them to change the use of their property," instructed his assistant "to refuse to disclose what [the] investigation revealed or contained," and refused to dismiss the nuisance action. *Id.* at 38, 39. Red Zone also argues that "[f]ar from acting merely as a prosecutor, Pfeiffer went so far as to attempt to permanently enjoin the plaintiffs' business and property from ever conducting business in the county." *Id.* at 35.

But, even assuming all of Red Zone's assertions about Pfeiffer's actions as true, Pfeiffer's conduct was "undertaken in connection with [his] duties in functioning as a prosecutor." *Skinner*, 463 F.3d at 525 (internal quotation marks omitted). His actions were those of an advocate. *Holloway*, 220 F.3d at 775. At bottom, Red Zone's contentions about Pfeiffer's conduct all center around his initiation and prosecution of the nuisance abatement suit. Red Zone claims that Pfeiffer unjustifiably pursued the nuisance suit until the bitter end. Thus, Red Zone—understandably so— does not like the way Pfeiffer litigated this lawsuit. But the initiation and prosecution of a lawsuit on behalf of the government fall squarely within prosecutorial functions. *Imbler*, 424 U.S. at 431. As do actions that are "preliminary to the initiation of a prosecution" and "apart from the courtroom." *Id.* at 431 n.33. This includes preparing and filing a public nuisance complaint, *Cooper*, 204 F.3d at 947, pre-trial negotiations, *Cady*, 574 F.3d at 341, improperly withholding or managing evidence, *Imbler*, 424 U.S. at 413, and seeking injunctive relief, *Shoultes*, 886 F.2d at

118. Thus, because all of the actions that Red Zone points to "are those of an advocate," Pfeiffer's conduct was prosecutorial. *Holloway*, 220 F.3d at 775.

Moreover, that Pfeiffer may have prosecuted with malicious intent is inapposite. Even bad motives do not void the protections of prosecutorial immunity. *Imbler*, 424 U.S. at 413; *Cady*, 574 F.3d at 341. Further, the Supreme Court explained in *Burns* that when "the judicial process is available as a check on prosecutorial actions[,] . . . '[t]he safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct.'" *Burns*, 500 U.S. at 492 (quoting *Butz v. Economu*, 438 U.S. 478, 512 (1978)). Here, the judicial system provided a check on Pfeiffer's behavior: the Franklin County Municipal Court dismissed the nuisance suit and denied Pfeiffer's request for injunctive relief. Thus, although Pfeiffer may have exercised poor judgment in pursuing the nuisance case, his actions were ultimately "subjected to the 'crucible of the judicial process.'" *Burns*, 500 U.S. at 496 (quoting *Imbler*, 424 U.S. at 440 (White, J., concurring in the judgment)). We therefore affirm the district court's grant of absolute prosecutorial immunity to Pfeiffer with regard to all of Red Zone's federal constitutional claims.

B.

We similarly affirm the district court's finding that Red Zone did not adequately allege a municipal policy or practice under 42 U.S.C. § 1983. Section 1983 creates a federal cause of action against "any person" who deprives someone of a federal constitutional right while acting under color of state law. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). Although § 1983 does not abrogate state sovereign immunity, the statute provides a vehicle to sue local governments for constitutional violations. *Id.* at 690. A city can be a "person" for the sake of a § 1983 claim. *Id.* But a municipality cannot be held liable under § 1983 on a *respondeat superior*

theory—or, in other words, because it employs a tortfeasor. *Id.* at 691. Rather, local governing bodies are "liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'caused one of its employees to violate the plaintiff's constitutional rights.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (brackets omitted) (quoting *Monell*, 436 U.S. at 692). The "touchstone," then, is an "official policy" that causes the alleged constitutional violation. *Monell*, 436 U.S. at 691.

Official municipal policy includes lawmakers' legislative and policy-making decisions, as well as "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). There are at least four avenues through which a plaintiff can hold a municipality liable under § 1983. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff can look to: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* (citing, among others, *Monell*, 436 U.S. at 694). The official policy or custom must be the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994) (noting that a municipality can be liable under § 1983 for "a pervasive custom or practice, of which the city lawmakers know or should know").

Here, Red Zone claims that the City is responsible for potential constitutional violations because its employee—Pfeiffer—improperly pursued a nuisance abatement suit against it. Though the district court addressed whether a city can be liable under § 1983 when a city prosecutor acts on behalf of the state in enforcing state law, we need not do so because the critical question is

11

whether he acted pursuant to City policy. Thus, Red Zone must identify a City policy or custom that was the moving force behind the violation.

We affirm because we conclude that Red Zone did not adequately allege that Pfeiffer acted pursuant to city custom or policy in bringing the nuisance action. Throughout Red Zone's complaint, attached exhibits, and briefs, it contends that the City "had a custom and policy by which it used the city attorney as its sole investigator and decision maker concerning whether and when to exert pressure on a recalcitrant business/property owner by filing a nuisance action to effectuate its urban redevelopment program." CA6 R. 20, Red Zone Br., at 43. To support the contention that the City has a custom of using the city attorney to file inappropriate nuisance actions on behalf of the state, Red Zone points to two public websites. First, Red Zone notes that the City's website includes a redevelopment plan for the area where Red Zone operated. Red Zone alleges that the City's redevelopment plan indicates that the City has a custom of pursuing unconstitutional nuisance actions. But this argument proves too much. Many cities have redevelopment plans. Without more, the simple existence of a redevelopment plan does not indicate a custom of constitutional violations.

Second, Red Zone points to the Columbus city attorney website's description of its "Zone Initiative Team." Here, Red Zone quotes the team's description: "This is a team of attorneys and others assembled from several divisions whose goal it is to use civil nuisance abatement actions to rid the City of dilapidated buildings. The team addresses issues from the neighborhood perspective, and focuses on what is popularly referred to as quality of life issues." DE 19, First Amend. Compl., Page ID 308.[2] Again, even if true, this website fails to support the argument that

---

[2] This quote no longer appears on the website.

the City has a custom of using the nuisance abatement system unconstitutionally. Nuisance abatement actions are constitutional.

Counterintuitively, Red Zone also argues that the City is liable under § 1983 because "[t]he *city's policy* of contacting and working with business and property owners to resolve any alleged nuisance *was never utilized*." CA6 R. 20, Red Zone Br., at 52 (emphasis added). But this argument cuts against the heart of a § 1983 claim—that official policy or custom was the "moving force" behind the constitutional violation. *City of Canton*, 489 U.S. at 389 (quoting *Monell*, 436 U.S. at 694). If this case was an aberration from normal City policy, as Red Zone contends that it was, then this is precisely the type of claim for which § 1983 was *not* intended. *See Monell*, 436 U.S. at 692.

Thus, under the facts that Red Zone has alleged, its allegation that the City has a custom of using nuisance abatement actions in an unconstitutional manner is no more than a "sheer possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). It might be true that the City has a custom of pursuing unconstitutional nuisance actions. But Red Zone has not sufficiently pled facts which give its claims facial plausibility. *Id.* Rather, Red Zone conclusively and repeatedly argues that the City's "use of the civil nuisance action process has unfortunately become a city policy, custom, and/or practice." DE 19, First Amend. Compl., Page ID 302. But without facts supporting that the City has ever filed a similarly inappropriate nuisance action against another business, or that Pfeiffer served as an official municipal policymaker under the circumstances, we cannot find that the City "'cause[d]' one of its employees to violate the plaintiff's constitutional right." *D'Ambrosio*, 747 F.3d at 386 (alteration in original) (quoting *Monell*, 436 U.S. at 692). We therefore conclude that the district court correctly dismissed the §

1983 claims against the City on the grounds that Red Zone did not adequately allege a municipal custom or policy.

C.

Because we dismiss Red Zone's § 1983 claims against Pfeiffer and the City based on threshold requirements, we decline to evaluate the merits of Red Zone's underlying federal constitutional claims.

IV.

For the reasons stated, we affirm the district court's judgment on the pleadings dismissing the federal constitutional claims against Pfeiffer and the City and remanding the remaining claims to state court.