FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TOPAZ JOHNSON, | No.23-15299 |
| *Plaintiff-Appellant*, | D.C. No. 2:22-cv-01235-TLN-EFB |
| v. | |
| HIGH DESERT STATE PRISON; SYLVA, Sergeant; BRIAN KIBLER, Warden, | OPINION |
| *Defendants-Appellees*. | |

| | |
|---|---|
| IAN HENDERSON, | No.23-15396 |
| *Plaintiff-Appellant*, | D.C. No. 2:22-cv-01235-TLN-EFB |
| v. | |
| HIGH DESERT STATE PRISON; SYLVA, Sergeant; BRIAN KIBLER, Warden, | |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted August 15, 2024
San Francisco, California

Filed January 27, 2025

Before:  Susan P. Graber, Consuelo M. Callahan, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Callahan;
Partial Concurrence and Partial Dissent by Judge Graber

## SUMMARY[*]

### Prison Litigation Reform Act

Reversing the district court's denial of a joint application to proceed in forma pauperis brought by three California inmates and its dismissal of their jointly filed lawsuit, the panel held that the Prison Litigation Reform Act ("PLRA") does not prohibit prisoners from proceeding together in lawsuits, but it does require that each prisoner in the lawsuit pay the full amount of the filing fee.

The district court denied the inmates' joinder as co-plaintiffs and informed them that they could each proceed with their claims in separate lawsuits. The district court reasoned that if multiple prisoners were permitted to proceed with a joint action and each paid the full filing fee, as required by the PLRA, 28 U.S.C. § 1915(b)(1), the amount

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

of fees collected would exceed the amount permitted by statute for commencement of the action, in violation of § 1915(b)(3), and the apparent intent of Congress. The district court further found that lawsuits brought by multiple prisoners proceeding pro se are incompatible with Rule 20 of the Federal Rules of Civil Procedure, permitting permissive joinder, because such lawsuits present unique problems not presented by ordinary civil litigation.

The panel held that while § 1915(b) requires prisoners to each pay the full filing fee to commence an action, the statute poses no obstacle to prisoners joining in a lawsuit. The district court erred by looking at PLRA subsections 1915(b)(1) and (b)(3) in isolation and thereby failed to internally harmonize § 1915(b), which according to its terms poses no prohibition against multi-prisoner lawsuits. Prisoners may join in a lawsuit and proceed together under § 1915 so long as they each pay the full amount of a filing fee.

The panel further held that the district court abused its discretion inn denying plaintiffs' permissive joinder under Rule 20 based on hypothetical concerns that were not based on the record.

Partially concurring and partially dissenting, Judge Graber agreed with the majority opinion that the PLRA does not prohibit prisoners from proceeding jointly under 28 U.S.C. § 1915 and that the district court abused its discretion when it denied plaintiffs' request for permissive joinder. But she respectfully dissented from the holding that each plaintiff must pay a filing fee. In Judge Graber's view, the PLRA provides for only one filing fee per civil action.

**COUNSEL**

George Mills (argued) and Benjamin Gunning, Roderick & Solange MacArthur Justice Center, Washington, D.C.; Easha Anand, Roderick & Solange MacArthur Justice Center, San Francisco, California; for Plaintiffs-Appellants.

Martha P. Ehlenbach (argued) and Oliver C. Wu, Deputy Attorneys General; Neah Huynh, Supervising Deputy Attorney General; Monica N. Anderson, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General, Sacramento, California; for Defendants-Appellees.

**OPINION**

CALLAHAN, Circuit Judge:

In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71. Among other reforms, the PLRA amended the statute governing in forma pauperis (IFP) proceedings, 28 U.S.C. § 1915. While § 1915 applied equally to all litigants prior to the PLRA, the amended statute created new rules specific to prisoners. One of these rules is that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1).

In July 2022, three inmates in a California state prison jointly filed suit in the Eastern District of California and applied to proceed IFP. The district court denied their

request for joinder and severed their claims, holding that "the interplay of the filing fee provisions" in the PLRA requires prisoners to file lawsuits separately. The district court also held that lawsuits with multiple prisoners proceeding *pro se* present "unique problems" that prohibit joinder under Rule 20 of the Federal Rules of Civil Procedure, such as the transfer of one or more plaintiffs to different institutions, the release of one or more plaintiffs on parole, and communication difficulties due to confinement.

We reverse. The PLRA does not prohibit prisoners from proceeding together in lawsuits, and the district court's denial of joinder was not based on the record before it.

## I

### A

The idea that all citizens should have access to the courts no matter their ability to pay can be traced back to the Magna Carta. *See* John MacArthur Maguire, *Poverty and Civil Litigation*, 36 Harv. L. Rev. 361 (1923). England codified this principle in the late 15th century, guaranteeing that "the poor Persons of this Land" could bring suit for "the Redress of Injuries and Wrongs to them" without paying court fees. 11 Hen 7 c.12 (1495). The right to proceed IFP was more checkered in American history, however. Some states considered proceeding IFP a common law or constitutional right, *see, e.g.*, *Spalding v. Bainbridge*, 12 R.I. 244, 244–45 (1879), while other states went "without provisions of even the most primitive sort to help poor litigants," Maguire, at 382–84. Then, in 1892, Congress codified the right to proceed IFP in federal courts so that no citizen would be denied an opportunity to commence an action "solely because his poverty makes it impossible for him to pay or secure the costs." *Adkins v. E.I. DuPont de Nemours & Co.*,

335 U.S. 331, 342 (1948); *see* Act of July 20, 1892, ch. 209, § 1, 27 Stat. 252, 252.

The 1892 Act permitted indigent citizens to "commence and prosecute to conclusion any . . . suit or action without being required to prepay fees or costs." 27 Stat. 252. It entitled an indigent litigant to proceed IFP by filing "a statement under oath" attesting to the inability to pay "because of his poverty." *Id.* The litigant was required to further attest that "he believes he is entitled to the redress he seeks." *Id.* Congress also vested courts with the discretion to dismiss the IFP action if "it [was] made to appear that the allegation of poverty is untrue, or if said court [was] satisfied that the alleged cause of action is frivolous or malicious." *Id.* In 1948, Congress recodified the IFP statute in 28 U.S.C. § 1915(a)–(e). *See* 62 Stat. 954–55. And in 1959, Congress expanded the right to any indigent "person." *See* Pub. L. No. 86-320, 73 Stat. 590 (replacing "citizen" with "person" in § 1915(a)). So from at least 1892 onwards, our nation ensured the right to proceed IFP, and indeed expanded the right, so that all segments of the population could commence federal lawsuits for free.

This changed with the PLRA. In the mid-1990s Congress began paying particular attention to the "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The number of prisoner lawsuits had grown from 6,600 in 1975 to more than 39,000 in 1994, 141 Cong. Rec. S14408, S14413 (daily ed. Sept. 27, 1995) (statement of Sen. Bob Dole), and by 1995, prisoners were responsible for filing more than 25% of the lawsuits in federal court. Administrative Office of the United States Courts, 1995 Federal Court Management Statistics 167. Through the PLRA, Congress enacted "a variety of provisions designed to bring this litigation under control"

and to stem the rising tide of prisoner litigation that was overflowing the nation's dockets. *Woodford*, 548 U.S. at 84.[1]

One of the provisions designed to curb prisoner litigation was 28 U.S.C. § 1915(b).[2] Recognizing that a litigant whose filing fees are assumed by the public "lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," *Neitzke v. Williams*, 490 U.S. 319, 324 (1989), Congress passed § 1915(b) to ensure prisoners "pay the fees that normally accompany the filing of a lawsuit," 141 Cong. Rec. S14413–14 (daily ed. Sept. 27, 1995) (statement of Sen. Bob Dole). Section 1915(b) thus departed from Congress's 100-year practice of permitting all litigants proceeding IFP—including prisoners—to commence lawsuits for free.

Section 1915(b) contains four subsections, each of which works to effect this change. Subsection (b)(1) requires that a prisoner pay "the full amount of a filing fee," including "an initial partial filing fee." Subsection (b)(2) provides the

---

[1] In addition to enacting the PLRA, the 104th Congress passed other legislation similarly designed to curb prisoner litigation. *See, e.g.*, The Antiterrorism and Effect Death Penalty Act of 1996, 110 Stat. 1214, 28 U.S.C. § 2244(d) (establishing a one-year statute of limitations); 141 Cong. Rec. S7651, S7657 (June 5, 1995) (statement of Sen. Bob Dole) ("If we really want justice . . . then we must stop the endless appeals and endless delays.").

[2] Other PLRA provisions designed in part to "reduce the quantity and improve the quality of prisoner suits," *Porter v. Nussle*, 534 U.S. 516, 524 (2002), include mandating administrative exhaustion, 42 U.S.C. § 1997e, prohibiting claims for emotional injury without a prior showing of physical injury, 42 U.S.C. § 1997e(e), early screening, 28 U.S.C. § 1915A, and adding a "three-strikes" penalty for prisoners who have filed "frivolous" litigation, 28 U.S.C. § 1915(g).

mechanism for paying and collecting this fee.  Subsections (b)(3) and (b)(4) then serve as "safety-valve" provisions, *see Bruce v. Samuels*, 577 U.S. 82, 89–90 (2016), ensuring that the filing fee collected not "exceed the amount of fees permitted by statute," and that a prisoner not be prohibited from bringing suit notwithstanding the prisoner's inability to pay the initial partial filing fee.

## B

Topaz Johnson, Ian Henderson, and Kevin Jones Jr. were all incarcerated in High Desert State Prison in California when they filed a lawsuit in the United States District Court for the Eastern District of California under 42 U.S.C. § 1983. They alleged that correctional officers forced them to stand in "dirty, urine smelling, holding cages in handcuffs" for nearly nine hours, causing them lower back pain, blistering on the bottom of their feet, and emotional pain.  Jones Jr. further alleged that his handcuffs were "extra tight" and cut into his left wrist, causing swelling and blood loss.  All three prisoners claimed that their conditions of confinement violated the Eighth Amendment and that they were falsely imprisoned.  Jones Jr. further claimed that correctional officers used excessive force against him.  Along with their complaint, the inmates filed a joint application to proceed IFP under 28 U.S.C. § 1915.

When screening the inmates' complaint, *see* 28 U.S.C. § 1915A, a magistrate judge denied the inmates' joinder as co-plaintiffs and informed them that they could each proceed with their claims in separate lawsuits.  In addition to denying joinder and severing Henderson and Johnson's claims, the magistrate judge dismissed Jones Jr.'s complaint without prejudice for failure to state a claim.  The district court

adopted the magistrate judge's findings and recommendations in full.

In the district court's view, "the interplay of the filing fee provisions in the [PLRA]" prevented inmates from bringing a lawsuit together. Looking to decisions from the Eleventh and Seventh Circuits, the court concluded that 28 U.S.C. § 1915(b)(1) "expressly requires" prisoners proceeding IFP to each pay the full filing fee for commencing an action, *see* 28 U.S.C. § 1914(a). The court then pointed to one of (b)(1)'s neighboring provisions, 28 U.S.C. § 1915(b)(3), which provides that "[i]n no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action." According to the district court, reading these two provisions together means that prisoners cannot bring a lawsuit together because if multiple prisoners were permitted to proceed with a joint action and each paid the full filing fee in accordance with § 1915(b)(1), the amount of fees collected would exceed the amount permitted by statute for commencement of the action in violation of § 1915(b)(3) and the apparent intent of Congress.

The district court also held that lawsuits brought by multiple prisoners proceeding *pro se* are incompatible with Rule 20 of the Federal Rules of Civil Procedure because they present "unique problems not presented by ordinary civil litigation." The court explained that these type of cases may be subject to "delay and confusion" because one of the prisoners might be transferred to a different institution or released on parole, and because of the communication difficulties "presented by confinement."

After none of the inmates took action within the deadlines set by the magistrate judge's orders, the district

court dismissed Johnson and Henderson's complaint without prejudice, and dismissed the entire action without prejudice. Johnson and Henderson timely appealed.**[3]**

## II

"Interpretation of the PLRA is a question of law, which we review de novo." *Page v. Torrey*, 201 F.3d 1136, 1138–39 (9th Cir. 2000). We review a district court's denial of joinder for abuse of discretion, *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997), and review de novo the district court's legal conclusions underlying its decision, *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1076 (9th Cir. 2010). A district court necessarily abuses its discretion if "it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

We have jurisdiction under 28 U.S.C. § 1291 because the district court's "dismissal of an action without prejudice [was] a final appealable order." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1084–85 (9th Cir. 2003).

## III

The district court's interpretation of the PLRA was partially correct. While § 1915(b) requires prisoners to each pay the full filing fee to commence an action, the statute poses no obstacle to prisoners joining in a lawsuit.

## A

In ascertaining the meaning of § 1915(b), "we begin, as always, with the statutory text." *Hernandez v. Williams,*

---

[3] We consolidated Johnson's and Henderson's separate appeals and, at our request, the California Office of the Attorney General appeared on behalf of Defendants.

*Zinman & Parham PC*, 829 F.3d 1068, 1072 (9th Cir. 2016). Section 1915(b) provides in relevant part:

> **(b)(1)** [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.  The court shall assess and, when funds exist, collect . . . an initial partial filing fee . . .
>
> **(2)** After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
>
> **(3)** In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.
>
> **(4)** In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

28 U.S.C. § 1915(b).

The "amount of fees permitted by statute for the commencement of a civil action," *id.* § 1915(b)(3), is provided by 28 U.S.C. § 1914, which presently requires "the parties instituting any civil action . . . to pay a filing fee of $350."[4]  In the district court's view, because "the full amount of a filing fee" for commencing an action is $350, if both Henderson and Johnson paid this amount—as required under subsection (b)(1)—then the "filing fee collected" from them together would exceed the $350 amount prohibited by subsection (b)(3).

This interpretation of § 1915(b) was incorrect.  For starters, it switched midstream whether the fee-collecting scheme applied to one prisoner or multiple prisoners.  When interpreting subsection (b)(1), the district court held that prisoners proceeding IFP must *each* pay the full filing fee. But then when interpreting subsection (b)(3), the court changed course and held that the statute considers collecting fees from *multiple* prisoners.  However, there is "scant indication that the statute's perspective shifts partway through."  *Bruce*, 577 U.S. at 89–90.  Section 1915(b) contemplates a "per-litigant approach," *Boriboune v. Berge*, 391 F.3d 852, 856 (7th Cir. 2004), and subsection (b)(3) governs collecting fees from an individual prisoner no matter how many join in a lawsuit.

We know this because § 1915(b)'s subsections "stubbornly require" courts to assess and collect filing fees based on an individual prisoner's financial circumstances. *See Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021).  For example, subsection (b)(1) requires that prisoners pay "the full amount of a filing fee," and when funds exist, pay "an

---

[4] The fee for filing a civil action was increased from $250 to $350 under the Deficit Reduction Act of 2005, 120 Stat. 183.

initial partial filing fee" based on "the average monthly deposits to the prisoner's account" or "the average monthly balance in the prisoner's account from the 6-month period immediately preceding the filing of the complaint or notice of appeal." Subsection (b)(2) then provides the nuts-and-bolts for doing this, requiring that prisoners "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account" and directing "[t]he agency having custody of the prisoner" to send these payments "from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10." At bottom, the amount and timing of payments under § 1915(b) are "contingent on certain person-specific findings," *Boriboune*, 391 F.3d at 856, so the district court erred in viewing subsection (b)(3) as contemplating the collection of fees from multiple persons.

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012)). Courts must consider each of a statute's subsections, and "the statute's terms and sequencing," *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019), to fully "construe what Congress has enacted." *Duncan v. Walker*, 533 U.S. 167, 172 (2001); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 133 (2000) (explaining that "a reviewing court should not confine itself to examining a particular statutory provision in isolation" but should interpret the statute "as a symmetrical and coherent regulatory scheme") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)). Here, the district court considered only half of § 1915(b)'s subsections, and in doing so failed

to abide by this longstanding principle of statutory interpretation.

By analyzing subsections (b)(1) and (b)(3) as though they exist separately from subsections (b)(2) and (b)(4), the district court by definition did not consider the statute's "sequencing," *New Prime Inc.*, 586 U.S. at 111, and ultimately advanced an "erroneous view of the law." *Cooter & Gell*, 496 U.S. at 405. When read in context, we see that subsection (b)(3) works in tandem with subsection (b)(4) to serve as a "safety-valve" for Congress' new fee-collecting scheme. *Bruce*, 577 U.S. at 89–90. Both subsections ensure that "[i]n no event shall" the filing fee collected from a prisoner through their monthly payments "exceed the amount of fees permitted by statute," or that a prisoner be prohibited from bringing a civil action even if "the prisoner has no assets and no means by which to pay the initial partial filing fee." Subsections (b)(1)–(2) thus set up the payment system, and subsections (b)(3)–(4) ensure that courts properly administer the system. *See Hagan v. Rogers*, 570 F.3d 146, 155 n.3 (3d Cir. 2009). And this system contemplates collecting fees from one prisoner at a time, so the "filing fee collected" in (b)(3) sensibly refers to the filing fee paid by each prisoner under (b)(1)–(2).

The district court's interpretation also conflated the filing fees required in IFP proceedings with the filing fees required in other proceedings. For instance, while both 28 U.S.C. §§ 1914 and 1917 contemplate paying one filing fee *per proceeding*, § 1915 contemplates paying one filing fee *per litigant*. The plain text of the different statutes makes this clear. Section 1914(a) requires that "the parties . . . pay a filing fee," and section 1917 requires a filing fee for "any separate or joint notice of appeal." Section 1915, by contrast, provides that "the prisoner shall be required to pay

the full amount of a filing fee." Recall that prior to the PLRA there were no filing fee whatsoever for IFP litigants. As the Supreme Court has instructed, we are "entitled to assume that, in amending [§ 1915], Congress legislated with care." *Palmore v. United States*, 411 U.S. 389, 395 (1973). Had Congress intended to equate the paying of fees under §§ 1914 and 1917 with the paying of fees under § 1915, "it would have said so expressly, and not left the matter to mere implication." *Id.*

Indeed, an "express provision 'would have been easy,'" *id.* at 395 n.5, as demonstrated by § 1915(f), which permits courts to award costs arising from IFP proceedings "as in other proceedings." 28 U.S.C. § 1915(f)(1).[5] This language shows that when Congress intended to equate IFP proceedings to other proceedings, "it knew how to do so." *Curtis v. United States*, 511 U.S. 485, 492 (1994). Congress' omission of similar language in § 1915(b) indicates that it did not intend to have IFP filing fees paid as they are in other proceedings. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (cleaned up). Because "we read this omission to be intentional," *Cornell v. Lima Corporate*, 988 F.3d 1089, 1099 (9th Cir. 2021), we conclude that Congress did not want prisoners to split the filing fee as litigants do in "other proceedings" brought under §§ 1914 and 1917. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("It is a fundamental principle of

---

[5] Congress has included a variation of this language in the IFP statute since 1892. *See* 27 Stat. 252, 252 (1892) (permitting courts to award costs "as in other cases"); 62 Stat 869, 955 (1948) (same).

statutory interpretation that absent provisions cannot be supplied by the courts.  To do so is not a construction of a statute, but, in effect, an enlargement of it by the court.") (cleaned up).

B

We do not write today's decision on a blank slate.  We join the Third, Seventh, and Eleventh Circuits in holding that each prisoner proceeding IFP must pay the full amount of a filing fee.[6]  Like us, each of our sister circuits has reached this conclusion by looking to the plain language of the PLRA.

In *Hubbard v. Haley*, for example, the Eleventh Circuit considered an appeal from multiple Alabama state prisoners and held that "the district court properly applied the clear language of the PLRA to require that each prisoner pay the full amount of the filing fees."  262 F.3d 1194, 1198 (11th Cir. 2001).  The Eleventh Circuit also looked at Congress' intent "to taper prisoner litigation" to conclude that "the Congressional purpose in promulgating the PLRA enforces

---

[6] Only the Sixth Circuit has arguably come to a different conclusion.  *See Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999); *In re Prison Litigation Reform Act*, 105 F.3d 1131 (6th Cir. 1997).  But district courts in that circuit are split on the precedential effect of these cases.  *See Jones v. Fletcher*, No. Civ.A.05CV07-JMH, 2005 WL 1175960, at *6 (E.D. Ky. May 5, 2005) ("Within the Sixth Circuit, it is unsettled whether the [PLRA] permits apportionment of filing fees"); *Montague v. Schofield*, No. 2:14-cv-00292, 2015 WL 1879590, at *4–5 (E.D. Tenn. Apr. 22, 2015) (agreeing with the Third, Seventh, and Eleventh Circuits that the PLRA counsels against the assessment of a single filing fee); *Calhoun v. Washington*, No. 21-10476, 2021 WL 1387782, at *1 n.1 (E.D. Mich. Apr. 13, 2021) (noting intra-circuit split in the Sixth Circuit for apportioning filing fees under the PLRA).

an interpretation that each prisoner pay the full filing fee." *Id.* at 1197–98.

In *Boriboune v. Berge*, the Seventh Circuit agreed with the Eleventh Circuit and held that "it is hard to read [the statue's] language any other way." 391 F.3d 852, 855 (7th Cir. 2004). The Seventh Circuit further explained that requiring each prisoner to pay the full filing fee was a more sensible reading of the statute because of the administrative difficulties that arise from a district court's "attempt to apportion one fee among multiple prisoners whose litigation histories and trust balances differ." *Id.* at 856. The Seventh Circuit explained that "[t]hese difficulties vanish if we take § 1915(b)(1) at face value and hold that one price of *forma pauperis* status is each prisoner's responsibility to pay the full fee in installments . . . no matter how many other plaintiffs join the complaint." *Id.*

Then, in *Hagan v. Rogers*, the Third Circuit agreed with *Boriboune* that "the requirement for each prisoner to pay a full fee is simply one price that a prisoner must pay for IFP status under the PLRA." 570 F.3d 146, 155 (3d Cir. 2009); *id.*at 160 (Jordan, J., concurring in part and dissenting in part). And like us, the Third Circuit explained how such an interpretation of subsection (b)(1) can be read in harmony with § 1915(b)(3) because when "[r]ead in sequence, common sense indicates that § 1915(b)(3) merely ensures that an IFP prisoner's fees, when paid by installment, will not exceed the standard individual filing fee paid in full." *Id.* at 155–56. As the Third Circuit explained, section 1915(b)(3) "must be read in the context of § 1915(b) as a whole. . . . Reading the PLRA as requiring each joined IFP litigant to pay a full individual filing fee by installment, and no more, harmonizes the PLRA with Rule 20, and internally harmonizes the various provisions of § 1915(b)." *Id.*

We further note that district courts in the Second, Fourth, Fifth, Eighth, and Tenth Circuits have also held that prisoners cannot split the cost of a filing fee when proceeding under § 1915(b).  A decision from the Southern District of New York provides a window into how these courts consider the issue.  In *Miller v. Annucci*, the district court held that the "prohibition in § 1915(b)(3) against collecting more than 'the amount of fees permitted by statute for the commencement of a civil action' does not cap the total fees collected from prisoners in a multiprisoner case at $350," but rather "prevents courts from collecting more than $350 in installment payments from *each* prisoner."  No. 18-cv-0037, 2018 WL 10125145, at \*3 (S.D.N.Y. Feb. 27, 2018).  Next, turning to the PLRA's "principal purpose" of deterring frivolous prisoner lawsuits and appeals, the court held that "[a] filing-fee discount that increases with each additional prisoner [who] joins an action is not consistent with the PLRA's legislative history."  *Id.* at \*4 ("Multiprisoner actions would naturally proliferate if such an incentive existed.").  Finally, the district court explained how the "administrative burdens associated with multiprisoner cases would also increase, both for the courts and for the prisons that administer the disbursement of prisoner funds under § 1915" if prisoners proceeding IFP were allowed to split the cost of a filing fee.  *Id.*[7]

---

[7] *See also, e.g.*, *Ofori v. Clarke*, No. 7:18-cv-00587, 2019 WL 4344289, at \*4 (W.D. Va. Sept. 12, 2019) ("[T]he plain language of the PLRA requires that each plaintiff be assessed the full filing fee."); *Glenewinkel v. Carvajal*, No. 3:20-cv-2256-B, 2020 WL 5513432, at \*2 (N.D. Tex. Sept. 14, 2020) ("Because one of the premier purposes of this provision was to curtail abusive prisoner tort, civil rights and conditions of confinement litigation, it necessarily requires that *each* prisoner who

In sum, the weight of authority supports our conclusion that the PLRA requires each prisoner proceeding IFP in a multi-prisoner lawsuit to pay "the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (internal quotations omitted). The district court erred in concluding that this requirement somehow prohibits IFP prisoners from proceeding together in a joint lawsuit. The district court's reasoning looked at subsections (b)(1) and (b)(3) in isolation and thereby failed to internally harmonize § 1915(b), which "according to its terms" poses no prohibition against multi-prisoner lawsuits. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

## C

Plaintiffs raise a number of arguments for why they can split the "full amount of a filing fee" under § 1915(b), but none are persuasive.

To begin, Plaintiffs rely on the Dictionary Act to argue that we should read section 1915(b)(1) as saying "if [prisoners] bring[] a civil action . . . in forma pauperis, [the prisoners] shall be required to pay the full amount of a filing fee." *See* 1 U.S.C. § 1. But Plaintiffs' reliance on the Dictionary Act "doesn't quite track." *Niz-Chavez*, 593 U.S.

---

files suit pay the filing fee.") (internal quotation marks omitted); *Taylor v. United States,* No. 2:20-cv-00207, 2021 WL 11551663, at *2 (E.D. Ark. June 2, 2021) ("Each of the six in forma pauperis Plaintiffs will be assessed a separate filing fee"); *Cremer v. Conover*, No. 09-3200-SAC, 2009 WL 3241583, at *1 (D. Kan. Oct. 1, 2009) ("[E]ach prisoner plaintiff in a non-habeas civil action is obligated to pay the full $350.00 district court filing fee over time").

at 161.  Even if one reads subsection (b)(1) as requiring that "the prisoners" pay the full amount of a filing fee, that says nothing about whether they must pay the fee collectively or separately.

Plaintiffs next contend that other sections in the IFP statute suggest they can split the fee to commence an action. For example, they argue that § 1915(b) "is a modification" of § 1915(a), which "ties the filing fee to the action, not the litigant."   But as explained above, § 1915(b) is not a "modification" of § 1915(a); it is a complete departure from the 100-year history of permitting all indigent litigants to commence federal lawsuits for free.  And it is unremarkable that § 1915(a) ties a litigant's inability to pay to an "action." Of course it does.  Courts must decide whether the litigant can pay for *something*.

Plaintiffs'   reliance   on   § 1915(f)   is   similarly unpersuasive.  Congress added subsections (f)(2)(A)–(C) so prisoners would pay costs "in the same manner" as paying fees, but otherwise left intact subsection (f)(1)'s directive that costs be awarded by courts "as in other proceedings." The textual similarities between §§ 1915(b) and 1915(f) thus concern the manner of making payments, but that's it.  *See Skinner v. Govorchin*, 463 F.3d 518, 522 (6th Cir. 2006).  So while a court can apportion *costs* between multiple IFP litigants as they do "in other proceedings,"[8] it cannot apportion the *filing fee* between multiple IFP litigants as it might otherwise do "in other proceedings."

---

[8] Federal Rule of Civil Procedure 54(d)(1) authorizes the award of costs "to the prevailing party."  When there are multiple prevailing parties, we have held that courts may apportion the award of costs. *See Williams v. Gaye*, 895 F.3d 1106, 1133 (9th Cir. 2018).

Perhaps recognizing that neighboring sections do not help, Plaintiffs turn to neighboring statutes for support. Relying on *Jones v. Bock*, Plaintiffs argue that § 1915(b) preserved the "usual practice" of apportioning filing fees among co-plaintiffs as provided in §§ 1914 and 1917. 549 U.S. 199, 212 (2007). But there was no "usual practice" for litigants proceeding IFP to pay *anything*, so adding subsection (b) to § 1915 did not preserve any practice for indigent litigants at all.[9] And like the district court, Plaintiffs conflate the filing fees required for IFP prisoners with those required for litigants in other proceedings. While both §§ 1914 and 1917 contemplate paying one filing fee per proceeding, § 1915 contemplates paying one filing fee per prisoner. Had Congress intended to equate how IFP prisoners pay fees to how litigants pay fees "in other proceedings," *cf.* 28 U.S.C. § 1915(f)(1), it would have said so. *Palmore*, 411 U.S. at 395; *Keene Corp.*, 508 U.S. at 208.

Finally, "[u]nable to squeeze more from the statute's text," *New Prime*, 586 U.S. at 120, Plaintiffs point to the PLRA's legislative history and policy arguments to support their position. They contend that "lawmakers communicated an intent to treat indigent, IFP prisoners *like*—not *worse* than—ordinary, non-indigent plaintiffs for fee purposes." That's true, but this is precisely what the PLRA does. Through enacting § 1915(b), Congress gave prisoners two options: they can either file suit under § 1914 like "ordinary, non-indigent plaintiffs" and pay the filing fee upfront by splitting the total amount however they choose, or they can file suit under § 1915 and each pay "the full amount of a

---

[9] *Jones* also considered preserving "the usual practice *under the Federal Rules*," 549 U.S. at 212 (emphasis added), and not the "usual practice" that might have existed under a statute.

filing fee" by making "monthly payments . . . until the filing fees are paid," 28 U.S.C. § 1915(b)(1)–(2).

While Plaintiffs assert that giving prisoners this choice produces an "absurd result" because indigent prisoners in a joint action will pay more under § 1915 than non-indigent prisoners under § 1914, the result makes practical sense. Take Plaintiffs' situation. On remand, Johnson and Henderson can proceed under § 1914 and decide amongst themselves how to apportion the cost upfront. For instance, they can each pay $175, or maybe one of them has more funds than the other and pays the entire $350.[10] Alternatively, they can proceed under § 1915 and each pay $350 over many months, and perhaps over many years. Which is better for them? That's not for us to decide. But by giving prisoners this choice, and by perhaps incentivizing prisoners to proceed under § 1914, Congress did indeed accomplish its goals of treating indigent IFP prisoners like "ordinary non-indigent plaintiffs" while simultaneously ensuring that prisoners retain access to court.

* * *

The district court's conclusion that Plaintiffs were barred from joinder because of the "interplay of the filing fee provisions in the [PLRA]" was wrong as a matter of law and thus constitutes an abuse of discretion. *Cooter & Gell*, 496 U.S. at 405. The PLRA poses no statutory obstacle to prisoners joining together in a lawsuit under § 1915. Prisoners may join in a lawsuit and proceed together under

---

[10] This is yet another indication that Congress did not intend IFP prisoners to pay a filing fee "as in other proceedings." *Cf.* 28 U.S.C. § 1915(f)(1). Under § 1914, one of the parties can pay nothing if the other party covers the full amount of the filing fee. The PLRA was intended to ensure that each prisoner pays.

§ 1915 so long as they each pay "the full amount of a filing fee."

IV

Even though the district court erred in interpreting the PLRA, Defendants still ask us to affirm the lower court's decision. In their view, while the district court might have misinterpreted the PLRA, this was not the sole basis for denying joinder because the court also considered "practical impediments" that would arise in managing joint litigation for *pro se* prisoners. It is true that the district court announced two bases for denying joinder, but the district court's second reason was also an abuse of discretion because its concern about "practical impediments" was not based on the record.

Rule 20(a) of the Federal Rules of Civil Procedure permits plaintiffs to join in a lawsuit if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact. *Coughlin*, 130 F.3d at 1350. However, even if these "threshold" requirements are met, *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980), district courts "must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side," *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire*, 623 F.2d at 1375). This is because Rule 20, like the other Federal Rules of Civil Procedure, "is designed to promote judicial economy, and reduce inconvenience, delay, and added expense." *Coughlin*, 130 F.3d at 1351; *see* 7 Wright & Miller, Federal Practice and Procedure § 1652 (3d ed.); *see also* Fed. R. Civ. P. 1. It is therefore within the district

court's "inherent power" to deny joinder if it would undermine "the orderly and expeditious disposition" of the case. *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (citations omitted).

When denying Plaintiffs' joinder under Federal Rule 20, the magistrate judge wrote:

> Rule 20(a) of the Federal Rules of Civil Procedure allows permissive joinder of plaintiffs when certain conditions are met. However, actions brought by multiple prisoners proceeding without counsel present unique problems not presented by ordinary civil litigation. For example, transfer of one or more plaintiffs to different institutions or release on parole, as well as the challenges to communication among plaintiffs presented by confinement, may cause delay and confusion.

While a district court has "broad discretion" in applying Rule 20. *Coleman*, 232 F.3d at 1297, the court here abused its discretion when basing its decision on hypothetical concerns that were without support in the record, *see United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (explaining that a court abuses its discretion when its application of a legal standard is "without 'support in inferences that may be drawn from the facts in the record'") (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 577 (1985)). Indeed, the district court based its decision on no evidence at all, which necessarily is an abuse of discretion.

A recent decision from the Fourth Circuit illustrates the district court's error.  In *Ellis v. Werfel*, four inmates commenced a *pro se* action in federal court alleging that the IRS unlawfully denied them all or part of their COVID-19 stimulus payments.  86 F.4th 1032, 1034 (4th Cir. 2023).  The district court denied permissive joinder and severed the inmates' claims into four separate actions in part because of "practical considerations," such as "cell reassignments, lock downs, or personal disagreements [that] will often prevent plaintiffs from properly preparing joint pleadings."  *Id.* at 1035–37.  The Fourth Circuit held that the district court abused its discretion because "there was nothing in the record to support those findings," and explained that the court's "practical considerations" concern was "at most, abstract observations, amounting only to speculation that was contradicted by the evidence in the record before it."  *Id.* at 1037.

The same applies here.  The district court provided at most "abstract observations" about the problems presented by *pro se* prisoner lawsuits.  Even if, in the district court's experience, actions like this one face "delay and confusion," the Federal Rules still require that the court tether its reasoning to facts in the particular case.  When the district court denied joinder under Rule 20, its concerns amounted to "speculation" and were "contradicted by the evidence in the record."  *Id.*  For instance, the district court held that *pro se* prisoners face "challenges to communication," but the record shows that Johnson, Henderson, and Jones Jr. each signed the complaint, and also signed the application to proceed IFP.  This suggests that the Plaintiffs did not have "challenges to communication" that would prevent joinder under Rule 20, at least at the time they filed the complaint.  While Plaintiffs *might* be transferred or released and *might*

face communication challenges, these hypothetical concerns were not actually reflected in the record before the district court. And, if these hypotheticals ever came to fruition, the district court can then sever Plaintiffs from the lawsuit. *See* Fed. R. Civ. P. 21.

Defendants, however, argue that courts should be able to consider plaintiffs' "incarcerated status" when making determinations under Rule 20 and that the district court did not abuse its discretion in doing so here. We do not disagree in theory, but such a consideration must still be tied to the facts in a particular case. For example, do facts in the record support the inference that one of the prisoners will be released during the pendency of the lawsuit? *See Adams v. GEO Grp.*, No. 5:21-cv-00297, 2021 WL 1813182, at \*2 (W.D. Okla. May 6, 2021). Or are the prisoners already located at different correctional centers? *See Clemons v. Basham*, No. 4:22-cv-00158, 2022 WL 444039, at \*1 (E.D. Mo. Feb. 14, 2022). Or have the prisoners already failed to comply with filing requirements such that a court can infer that the prisoners actually do face communication challenges? *See Cullum v. Davis*, No. 15-cv-0057, 2016 WL 192609, at \*2 (S.D. Ill. Jan. 15, 2016). In short, considering plaintiffs' "incarcerated status" and considering plaintiffs' actual circumstances as required by the Federal Rules are not mutually exclusive. However, basing a decision to deny Rule 20 joinder on generalities untethered from the record in the particular case is an abuse of discretion. Stated differently, if the court relies only on general propositions, it by definition does not base its decision on "inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262. This necessarily constitutes an abuse of discretion.

Defendants also argue that our holding will require district courts to receive evidence at the screening stage regarding the plaintiffs' ability to litigate as a group. They believe courts will need to engage in "extraneous evidence-gathering" regarding the plaintiffs' coordination capabilities, "all while ignoring the practical realties of *pro se* prisoner litigation." In Defendants' view, joint *pro se* prisoner litigation will "predictably cause delays," so it makes sense for district courts to deny permissive joinder at the outset without having to assess the facts in the record.

While we are sympathetic to this concern, Defendants' point to no instance where a district court underwent "extraneous evidence-gathering" or where the parties were prejudiced by permitting joinder at the outset. Indeed, Defendants cite a handful of cases where district courts presumably denied permissive joinder based on general concerns of multi-prisoner *pro se* litigation, but in each case the district court reached its decision at least in part on plaintiffs' pleadings and actual circumstances.[11] We further

---

[11] *See Smith v. Haley*, No. 23-cv-02043, 2023 WL 4426024 (N.D. Cal. July 10, 2023) (plaintiff sought to pursue claims "on behalf of others in a representative capacity"); *Clemons*, 2022 WL 444039, at *1 (plaintiffs were incarcerated at different correctional centers and only one of the three plaintiffs signed the complaint); *Evans v. Tharp*, No. 3:21-cv-00905, 2021 WL 3634175 (S.D. Ill. Aug. 17, 2021) (plaintiffs' claims arose out of different facts); *Adams*, 2021 WL 1813182, at *2 (Oklahoma Department of Corrections website indicated one of the prisoners "may be released to probation within a few months"); *Correa v. Ginty*, No. 7:20-cv-05791, 2020 WL 4676576, at *2 (S.D.N.Y. Aug. 12, 2020) (plaintiffs' claims did not stem from "one common set of facts"); *Ofori v. Clarke*, No. 7:18-cv-00587, 2019 WL 4344289, at *3 (W.D. Va. Sept. 12, 2019) ("[T]he complaint itself names numerous defendants and asserts numerous, unrelated claims."); *Cullum v. Davis*, No. 15-cv-0057,

expect that the defendants in a civil action will bring to the court's attention any impediments to the joint action.  More to the point, Defendants' argument runs up against the longstanding standard for reviewing a lower court's discretionary decision-making.  We review a district court's decision to deny joinder for abuse of discretion, which means the decision must apply Rule 20 in a way that is not "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262.  Defendants ask us to affirm a decision that is not tethered to any facts in the record other than that Plaintiffs are prisoners proceeding *pro se*.  We decline to do so, and hold that the district court abused its discretion in denying joinder based on "abstract observations" about Plaintiffs' circumstances and "speculation" not supported by the record.  *See Werfel*, 86 F.3d at 1037.

---

2016 WL 192609, at *2 (S.D. Ill. Jan. 15, 2016) ("Plaintiffs Cullum and Adams are presently housed at different correctional institutions."); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 756 (E.D. Mich. 2009) (plaintiffs' claims "involve several defendants and multiple prison facilities [which] necessarily require resolution of factual claims (including numerous individual exhaustion issues) that are not appropriately joined"); *Beaird v. Lappin*, No. 3:06-cv-00967, 2006 WL 2051034, at *4 (N.D. Tex. July 24, 2006) ("[H]aving carefully reviewed the complaint, it is impossible for the court to discern how the alleged conditions of confinement affected each Plaintiff.").

The only case cited by Defendants that denied permissive joinder entirely based on hypothetical concerns detached from the record is *Pratt v. Hendrick, et al.*, No. 3:13-cv-04557, 2014 WL 280626 (N.D. Cal. Jan. 24, 2014) ("Basic case management principles of delay reduction and avoidance of confusion call for *pro se* prisoner-plaintiffs to prosecute their claims separately.").  *Pratt* was not appealed to the Ninth Circuit, but if it had been, we are confident this court would have corrected such an erroneous application of Rule 20.

## V.

We hold that the PLRA poses no obstacle to prisoners proceeding together in a lawsuit under 28 U.S.C. § 1915. The PLRA requires each prisoner in such a lawsuit to pay "the full amount of a filing fee," and ensures that courts do not collect from each prisoner more than "the amount of fees permitted by statute." We also hold that the district court abused its discretion when denying Plaintiffs' permissive joinder under Rule 20 based on hypothetical concerns that were not based on the record. Accordingly, we **REVERSE** the district court's decision.

---

GRABER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion that the PLRA does not prohibit prisoners from proceeding jointly under 28 U.S.C. § 1915 and that the district court abused its discretion when it denied Plaintiffs' request for permissive joinder. But, for three reasons, I respectfully dissent from the holding that each plaintiff must pay a filing fee. In my view, the PLRA provides for only one filing fee per civil action. First, the PLRA's text strongly suggests that only one fee per action is owed. Second, if the statutory text is ambiguous, then the usual rule—one fee per action, which co-plaintiffs may share—applies. Third, the majority opinion's ruling produces absurd results.

A. The PLRA Makes Clear That Only One Filing Fee May Be Collected Per Action.

First and foremost, the majority opinion misreads the governing statute.

Title 28 U.S.C. § 1915(b) provides:

(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

Subsection (b)(1) describes how a filing fee is to be paid "if a prisoner brings a civil action." (Emphasis added.) That wording, with "prisoner" in the singular, does not explicitly address, one way or another, what happens when "prisoners" in the plural bring "a" single, joint civil action. But subsection (b)(3) provides, in no uncertain terms: "In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action." (Emphases added.) The commencement of "a" single civil action requires the payment of a single filing fee. The statute absolutely forbids a district court from collecting even a penny more than the full amount of the usual fees permitted by statute for the commencement of "a" civil action. A civil action brought by more than one plaintiff remains "a" civil action in the singular. And "in no event" means exactly that.

My interpretation is buttressed by an additional statute. Because subsection (b)(1) does not explicitly describe a civil action brought by more than one prisoner, we must consider how to read subsection (b)(1) when several prisoners jointly file a single civil action. Title 1, section 1 of the United States Code provides: "In determining the meaning of any Act of Congress, unless the context indicates otherwise[,] words importing the singular include and apply to several persons, parties, or things." "A civil action" cannot be pluralized because it is undeniable that several plaintiffs can proceed jointly in a single action. After pluralizing the

remainder of the sentence, the relevant part of subsection (b)(1) would read: "[I]f . . . prisoner[s] bring[] a civil action . . . the prisoner[s] shall be required to pay the full amount of . . . filing fee[s]." Pluralizing subsection (b)(1) cannot result in more than one fee, because subsection (b)(3) forbids district courts from collecting more than the statutorily prescribed "amount of fees" necessary to commence a single civil action: "In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action." Notably, subsection (b)(3) also uses a definite article, "the," instead of an indefinite article, "a," which is further evidence that the total amount of "the" filing fee cannot be multiplied even when several plaintiffs proceed jointly.

The majority opinion's conclusion is also inconsistent with § 1915(f), which states that, "[i]f the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered." 28 U.S.C. § 1915(f)(2)(A) (emphasis added). The text of § 1915(f)(2)(A) is the same as the text of § 1915(b)(1) in referring to "a prisoner." Applying the majority opinion's logic would mean that a defendant could be awarded many times its costs, because each prisoner would be liable for the full amount of costs. But the statute sensibly and plainly prohibits multiplying costs in exactly the same way it prohibits multiplying filing fees. Section 1915(f)(2)(C) provides: "In no event shall the costs collected exceed the amount of the costs ordered by the court." The only textual difference is that, in the cost section, the court is forbidden to collect more than "the amount of the costs ordered by the court," id., while in the filing-fee section the court is forbidden to collect more than "the amount of fees permitted by statute for the commencement of a civil

action," id. § 1915(b)(3) (emphasis added).  Under ordinary principles of statutory construction, the results of these parallel statutory provisions likewise must be parallel: only one filing fee per action, and only the court-ordered amount of costs, may be collected.  Cf. Mohamad v. Palestinian Auth., 566 U.S. 449, 456 (2012) (noting the presumption that a given term means the same thing throughout a statute); In re Cybernetic Servs., Inc., 252 F.3d 1039, 1051 (9th Cir. 2001) ("[W]e presume that words used more than once in the same statute have the same meaning throughout.").

> B.  Even If the Statute Were Ambiguous, Only One Filing Fee May Be Collected Per Action.

In the alternative, it can be argued that the PLRA is ambiguous with respect to a per-litigant versus a per-action filing fee, because the text of § 1915 is silent about the specific question of filing fees in multi-plaintiff actions. Ambiguity leads to the same result as the statutory interpretation that I have offered above.  As the Supreme Court has explained, Congressional silence is "strong evidence that the usual practice should be followed" because, "when Congress meant to depart from the usual procedural requirements, it did so expressly."  Jones v. Bock, 549 U.S. 199, 212, 216 (2007).  The usual procedural requirement is one filing fee per civil action.

> C.  Reading the Statute to Allow Per-Litigant Filing Fees Leads to an Absurd Result.

Because the statute is clear, and because the Supreme Court has instructed us how to interpret it if it is ambiguous, I would stop there.  But we also must analyze statutes to avoid absurd results.  See Ma v. Ashcroft, 361 F.3d 553, 558 (9th Cir. 2004) ("[S]tatutory interpretations which would produce absurd results are to be avoided." (citing United

States v. Wilson, 503 U.S. 329, 334 (1992))).  The majority opinion's interpretation yields absurd results.

Non-indigent prisoners who file a joint action pay a single fee.  The majority opinion's reading of the statute means that indigent prisoners—those who have <u>less</u> or <u>no</u> money—would pay more than prisoners who have more money.  That is a perverse result.  More importantly, my reading of the statute is faithful to the Congressional intention that prisoners "pay the fees that <u>normally</u> accompany the filing of <u>a</u> lawsuit," 141 Cong. Rec. S14408-01, S14413 (Sep. 27, 1995) (statement of Sen. Bob Dole) (emphases added).  The fees that normally accompany the filing of a single lawsuit comprise, of course, a single filing fee.

In addition, judicial economy is <u>served</u> by having plaintiffs with the same claim—such as the two plaintiffs here—bring a single action.  See Bruton v. United States, 391 U.S. 123, 131 n.6 (1968) (stating that joinder is "designed to promote economy and efficiency and to avoid a multiplicity of trials" (citations omitted)).  Incentivizing plaintiffs to file a single action furthers the goal of judicial economy.  Requiring per-plaintiff fees destroys any such incentive and, instead, engenders additional lawsuits, along with their additional burdens on the district courts.  Moreover, an action that is frivolous is no more frivolous if brought by several plaintiffs instead of one.  Because joinder allows a defendant to ask the district court to dispose of many frivolous claims simultaneously, a per-action filing fee likely would <u>reduce</u> the number of frivolous lawsuits that a court confronts.

For all of these reasons, I respectfully dissent in part.