# SUPREME COURT OF THE UNITED STATES

TOPAZ JOHNSON, ET AL. *v.* HIGH DESERT
STATE PRISON, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 25–457.   Decided March 2, 2026

The petition for a writ of certiorari is denied.  JUSTICE KAGAN would grant the petition for a writ of certiorari.

JUSTICE SOTOMAYOR, with whom JUSTICE JACKSON joins, dissenting from denial of certiorari.

This case asks whether federal law prohibits the poorest prisoners from splitting the $350 fee required to file a federal lawsuit when it allows everyone else to do so.  The answer statutorily appears to be no.  Because the decision below held otherwise and deepened a split among the Courts of Appeals, the Court should grant the petition for a writ of certiorari.

## I
## A

Filing a federal lawsuit costs money.  Title 28 U. S. C. §1914(a) provides that "parties instituting any civil action" must "pay a filing fee of $350."  Because that fee is assessed per case, if multiple plaintiffs file one case, they can split the fee among themselves.  See §1914(a).

Not everyone, whether filing alone or together, can pay $350.  Rather than close the courthouse doors to those facing financial hardship, federal law permits indigent plaintiffs to proceed "*in forma pauperis,*" or IFP.  §1915(a).  District courts may except IFP plaintiffs from paying the full filing fee and other fees if they make a sufficient showing of financial need when they initiate their lawsuit.  *Ibid.*

There is an exception to this exception.  Under the Prison Litigation Reform Act of 1995 (PLRA), federal courts may

not waive or reduce the filing fee for an indigent prisoner proceeding IFP. §1915(b)(1). Instead, the statute provides that a prisoner proceeding IFP "shall be required to pay the full amount of a filing fee," and instructs courts to deduct the fee in installments from the prisoner's account. *Ibid.* At the same time, the PLRA specifies that "[i]n no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action." §1915(b)(3).

## B

Petitioners Topaz Johnson and Ian Henderson were incarcerated at High Desert State Prison in California when they filed this lawsuit in federal court. According to their complaint, corrections officers forced them and a third prisoner to stand in filthy cages that reeked of urine and measured 2.5 feet by 2.5 feet. They alleged that the officers forced them to stand in those cages for nearly nine hours with their hands cuffed behind their backs.

Petitioners and the third prisoner then jointly sued, contending that their treatment violated the Eighth Amendment. They also sought leave to proceed IFP and filed affidavits stating that they had no money in their accounts and no income.

The District Court ordered the three prisoners to file three separate lawsuits. It concluded that, because the PLRA requires IFP prisoners to pay "the full amount of a filing fee," but also prohibits federal courts from collecting more than "the amount of fees permitted by statute," each plaintiff had to file his own lawsuit and pay the full $350 fee in order to proceed IFP. §§1915(b)(1), (3). The District Court therefore severed petitioners from the case. Petitioners then appealed.

The Ninth Circuit reversed the decision to sever, but affirmed as to the filing fee, holding that the three plaintiffs could proceed in one suit but each needed to pay $350. 127

F. 4th 123, 134 (2025). Agreeing with the Third, Seventh, and Eleventh Circuits, the Ninth Circuit held that the PLRA requires each individual prisoner to pay the full filing fee. Judge Graber dissented as to the filing fee. *Id.*, at 137. The full Ninth Circuit denied en banc review. 145 F. 4th 1052 (2025). Judge Fletcher, joined by Judge Graber, issued a statement in which he expressed "the hope the Supreme Court will grant certiorari." *Id.*, at 1058.

## II

The Ninth Circuit's decision is likely incorrect. Starting with the text, §§1915(a)(1) and (b)(1) create an exception to the usual IFP rule for indigent plaintiffs. Section 1915(a)(1) sets forth the general rule that courts may allow an indigent person to commence a suit "without prepayment of fees." It also says that this rule is "[s]ubject to subsection (b)." Section 1915(b)(1), in turn, specifies that, "[n]otwithstanding subsection (a), if a prisoner brings a civil action . . . in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." In other words, §1915(b)(1) denies to a prisoner one usual benefit of proceeding IFP: a waived or reduced filing fee. Prisoners proceeding IFP still receive some benefit, however: Under §§1915(b)(1) and (2), they can pay most of the filing fee in monthly installments over time, rather than all at once up front.

The question then becomes whether, by denying prisoners one of the benefits of IFP status (waiver or reduction of the filing fee), Congress also silently denied to indigent prisoners the ability to split the fee. It did not.

To start, the ability to split filing fees does not come from IFP status or from §1915. Instead, it comes from §1914(a), which requires "the parties . . . to pay a filing fee of $350" when initiating a civil lawsuit. That provision makes two things clear: first, that the filing fee is assessed per case, and second, that "the parties" are collectively responsible for paying "a filing fee." *Ibid.* There is no dispute among

courts that §1914(a) works in this way: All district courts
collect a single fee per case, no matter how many plaintiffs
filed it. So under §1914(a)'s default rule, when multiple
prisoners file one lawsuit, the prisoners together must pay
$350.

That default rule matters because Congress passed the
PLRA knowing how civil litigation and IFP status ordinar-
ily work. See *Jones* v. *Bock*, 549 U. S. 199, 216 (2007). Ac-
cordingly, this Court has explained, "when Congress
meant" for the PLRA "to depart from the usual procedural
requirements, it [said] so expressly." *Ibid.*

Here, the PLRA does not expressly instruct courts to col-
lect multiple fees for one suit from indigent prisoners. In
fact, it says the exact opposite: "In no event shall the filing
fee collected exceed the amount of fees permitted by statute
for the commencement of a civil action." §1915(b)(3). This
unequivocal prohibition makes clear that, even when mul-
tiple prisoners proceed IFP in a single lawsuit (an "event"
in §1915(b)(3)'s terms), courts cannot collect more than
what federal law permits them to charge when "parties in-
stitut[e] any civil action": $350, per case. §1914(a). Thus,
if anything, Congress explicitly forbade the result that the
panel below reached: requiring collection of $1,050 in one
case when §1914(a) permits collection of only $350 per case.

In holding otherwise, the panel extended §1915(b)(1) to
provide that *each* "prisoner shall be required to pay the full
amount of a filing fee," and recast §1915(b)(3) to "refe[r] to
the filing fee paid by each prisoner," 127 F. 4th, at 129. Re-
spondents here echo that §1915(b)(3) simply prevents
courts from charging IFP prisoners more than a single fil-
ing fee each. Brief in Opposition 7–8. The upshot of these
positions, however, is to leave §1915(b)(3) a dead letter and
only the poorest prisoners, alone among all litigants, to pay
multiple times the ordinary filing fee otherwise set by fed-
eral law. There is no indication that Congress intended to
accomplish either absurd result here.

The panel's reading of §1915(b)(1) also produces unfair results. As §1915(b)(1) applies only to prisoners who proceed IFP, all agree that non-IFP prisoners can share the filing fee. The result is that two prisoners with enough money can sue together and pay $175 each. Two prisoners without enough money, however, must each pay $350 even if they sue together. If Congress meant to change civil procedure to make those with less pay more, it would have said so. Without such a command, it makes no sense to think that Congress intended for non-IFP prisoners to pay a fraction of what IFP prisoners must pay.

The panel suggested that these unfair results were justified as a means of advancing Congress's goal of reducing frivolous prisoner litigation. See 127 F. 4th, at 131–132. As Judge Graber pointed out, however, requiring each prisoner to pay the full filing fee removes any incentive to file jointly and may lead to prisoners filing additional, duplicative lawsuits. *Id.*, at 139. Permitting prisoners to split filing fees thus serves judicial economy by encouraging them to file a single suit. In any event, even if treating the poorest prisoners in this way is consistent with Congress's purpose, "'[n]o legislation pursues its purposes at all costs.'" *Bowe* v. *United States*, 607 U. S. \_\_\_, \_\_\_ (2026) (slip op., at 19) (alteration in original).

The only reasonable way to make sense of the statutory scheme in its entirety is to recognize that courts may not, under §1915(b)(1), waive or reduce a prisoner's filing fee, but also may not, under §§1914(a) and 1915(b)(3), collect more than a single filing fee for the whole case. What that means is that indigent prisoners must be allowed to share the cost of a single filing fee. The Ninth Circuit likely erred in holding otherwise.[1]

_____

[1] Recognizing the tension between §§1914(a), 1915(b)(1), and 1915(b)(3), the District Court attempted to harmonize the three by

SOTOMAYOR, J., dissenting

### III

The remaining certiorari factors also favor granting this petition. See this Court's Rule 10. First, there is an entrenched split on this issue. Before the decision below, the Third, Seventh, and Eleventh Circuits all had held that prisoners proceeding IFP cannot split fees when joining in one lawsuit. See *Hagan* v. *Rogers*, 570 F. 3d 146, 155 (CA3 2009); *Boriboune* v. *Berge*, 391 F. 3d 852, 856 (CA7 2004); *Hubbard* v. *Haley*, 262 F. 3d 1194, 1195 (CA11 2001). The Sixth Circuit, on the other hand, permits IFP prisoners to split fees. *In re Prison Litigation Reform Act*, 105 F. 3d 1131, 1138 (1997) (*In re PLRA*).[2] The Ninth Circuit's decision here deepened that entrenched split. See 127 F. 4th, at 130, n. 6 (declining to follow the Sixth Circuit's approach); see also *Hagan*, 570 F. 3d, at 154 (noting disagreement between the Sixth and Seventh Circuits).

─────────────

prohibiting IFP prisoners from joining together in multiple-plaintiff lawsuits at all. *Jones* v. *High Desert State Prison*, 2022 WL 3969635, \*1 (ED Cal., Aug. 31, 2022). As the Ninth Circuit recognized, this reasoning runs into a distinct problem: Federal Rule of Civil Procedure 20(a)(1) allows parties like petitioners to "join in one action," while the District Court's reasoning prohibits such joinder. That amounts to a determination that the PLRA (which does not mention Rule 20) implicitly repealed Rule 20(a)(1) as to prisoner litigants. "'[R]epeals by implication,'" however, "'are not favored' and will not be presumed unless the 'intention of the legislature to repeal [is] clear and manifest.'" *National Assn. of Home Builders* v. *Defenders of Wildlife*, 551 U. S. 644, 662 (2007) (quoting *Watt* v. *Alaska*, 451 U. S. 259, 267 (1981)). No such intention is apparent here.

[2] The panel below noted that District Courts in the Sixth Circuit "are split on the precedential effect" of *In re PLRA*. 127 F. 4th 123, 130, n. 6 (CA9 2025). Although *In re PLRA* was an administrative order issued by the Sixth Circuit's Chief Judge, that Circuit has affirmed its rule and treated the order as binding in other cases. See, *e.g.*, *Talley-Bey* v. *Knebl*, 168 F. 3d 884, 885 (1999) ("We . . . take this occasion to affirm the position that, for the purposes of the [PLRA], when a district court imposes fees and costs upon multiple prisoners, the fees and costs are to be proportionally assessed among the prisoners"); see also *Singleton* v. *Smith*, 241 F. 3d 534, 543 (CA6 2001) (treating *In re PLRA* as binding).

Second, this case presents an important, recurring issue of federal law.  According to petitioners' estimate, federal courts denied fee splitting at least 84 times in a 12-month span.  Pet. for Cert. 17.  Had those cases been brought in the Sixth Circuit, those plaintiffs could have divided the fees up among themselves.[3]

The ability to split fees matters because $350 is a significant amount of money, particularly to indigent prisoners. On average, prisoners make between $0.13 to $1.30 per hour.  Brief for Public Justice et al. as *Amici Curiae* 12. Paying the full $350 fee therefore requires prisoners to work for hundreds, if not thousands, of hours.  Prisoners also cannot put every cent of their wages toward paying a filing fee.  Instead, they must also spend their meager earnings on basic necessities: food to supplement prisons' inadequate portions, phone calls to loved ones that must be paid for by the minute, clothing, hygiene products, medical care, and more.  See *id.*, at 4–11.  Requiring indigent prisoners each to pay the full $350 filing fee needlessly and unfairly makes it harder for them to vindicate their rights, challenge conditions of confinement, and (like petitioners) obtain redress for alleged mistreatment.

To add to their financial burdens, prisoners who wish to appeal the initial filing fee must pay an additional $600. See §1915(b)(1); Administrative Office of the U. S. Courts, Court of Appeals Miscellaneous Fee Schedule (Dec. 1, 2023),          https://www.uscourts.gov/court-programs/ fees/court-appeals-miscellaneous-fee-schedule.   That considerable sum makes it even harder for prisoners earning cents on the hour to obtain justice.  One of the three plaintiffs in this case chose not to appeal at all.  I can only hope that the next time indigent prisoners facing this issue raise

───────────

[3] The real number of denials is likely higher, given limitations in federal courts' recordkeeping and the fact that many orders denying fee splitting are likely unavailable in commercial databases.  See Pet. for Cert. 16–17.

nearly $1,000 each just for the opportunity to knock on this Court's door, my colleagues will choose to open it.  I respectfully dissent.